595 F.Supp. 552 (1984)
FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff,
v.
Dominga P. RATHGENS, et al., Defendants.
No. C-1-83-575.
United States District Court, S.D. Ohio, W.D.
September 20, 1984.
Richard D. DeBlasis, Cincinnati, Ohio, for plaintiff.
Stephen H. Olden, Legal Aid Society, Cincinnati, Ohio, for defendant Rathgens.
Nicholas J. Pantel, Asst.U.S.Atty., Cincinnati, Ohio, for HUD.

MEMORANDUM OPINION AND FINAL JUDGMENT
CARL B. RUBIN, Chief Judge.
This case originally arose out of a foreclosure action brought in the Common Pleas Court of Hamilton County, Ohio. Defendant mortgagor impleaded the United States Department of Housing and Urban Development ("HUD") as insurer of *553 the mortgage. HUD then removed the entire case to this Court under 28 U.S.C. § 1441 (1982). The case is properly before the Court pursuant to 28 U.S.C. § 1331 (1982) since resolution of the dispute requires the application of the National Housing Act (NHA), 12 U.S.C. § 1701 et seq. (1982). The facts are not in dispute.
Rathgens purchased her home in 1975 for $17,500. Her $17,000 mortgage was insured by HUD under section 203 of the NHA. 12 U.S.C. § 1709 (1982). Mortgage payments were $175 per month.
On August 18, 1981, Rathgens began a marriage that ended in divorce in August, 1982. During the first four months of their marriage, Rathgens's husband amassed substantial debt in her name, including the purchase of a 1981 Ford pickup truck, a 1981 Grand Prix and credit card debts. The couple separated in late January, 1982.
In the divorce proceedings, Probate Court found Rathgens's husband guilty of gross neglect and extreme cruelty. The property settlement gave him the truck and held him liable for the credit card debts. Rathgens received the house and the Grand Prix. The truck was returned to Ford in August, 1982 creating a deficiency of $1,382.15 for which Rathgens is liable. The divorce decree ordered Rathgens's ex-husband to defend and indemnify Rathgens on that debt.
Four months into their short marriage, the husband's "extreme cruelty" resulted in injuries that forced Rathgens to take sick leave from work for January through May of 1982. It was in January, 1982 that Rathgens began to fall behind in her mortgage payments. February's payment was never fully paid.
The mortgagee sent Rathgens a Notice of Intent to Foreclose on June 18, 1982. In August, Rathgens petitioned HUD to accept assignment of her mortgage under the provisions of the NHA. At the time, she was making $135 a week as a bookkeeper at Sears and $90 a week in child support. HUD held a conference with Rathgens September 22, 1982 and denied her request September 30. On December 6, 1982, the mortgagee filed a foreclosure action in Common Pleas Court. Rathgens requested reconsideration by HUD on January 13, 1983 and submitted additional documentation. After reviewing the additional information, HUD again denied her request on January 31 and February 2, 1983.
The goal of the NHA is to provide a decent home and a suitable living environment for every American family. 12 U.S.C. § 1701t (1982). In furtherance of that goal, Congress established a Mortgage Insurance Program that enabled lenders to offer essentially risk-free mortgages to low income families at terms more favorable than they could get on the market. See e.g., 12 U.S.C. § 1709(b)(5) (1982). Congress also provided a Foreclosure Avoidance Program whereby HUD could help a mortgagor avoid foreclosure by acquiring the mortgage, suspending payments for up to 36 months, and refinancing the debt over an extended period of up to 10 years. Id. at § 1715u; 24 C.F.R. § 203.650 (1983). Consistent with its Congressional mandate, HUD is required to acquire mortgages from mortgagors who meet six well-defined criteria. Brown v. Lynn, 385 F.Supp. 986, 998-99 (N.D.Ill.1974); Ferrell v. Pierce, 560 F.Supp. 1344, 1350 (N.D.Ill. 1983).
(a) The Secretary will accept assignments of mortgages insured under this part in order to avoid foreclosure when the following conditions are met:
(1) The mortgagee has informed the mortgagor that it intends to foreclose the mortgage;
(2) At least three full monthly installments due on the mortgage are unpaid after application of any partial payments which may have been accepted but not yet applied to the mortgage account.
(3) The property is the mortgagor's principle place of residence. This criterion may be waived by the Secretary if the property has been leased or rented and the rental income has been applied to the mortgage delinquency or to effect repairs necessary to maintain the property *554 in a safe and habitable condition or if such waiver is determined to be in the best interests of the Department.
(4) The mortgagor does not own other property subject to a mortgage insured or held by the Secretary. This criterion may be waived by the Secretary if the income from such other property is the mortgagor's principle source of income.
(5) The mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments.
(6) There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to 10 years.
24 C.F.R. § 203.650 (1983).
HUD based its denial of Rathgens's assignment request on criteria five and six. HUD stated in its initial rejection letter of September 30, 1982 that:
[Y]ou did not meet the criterion that the default has been caused by circumstances beyond your control which rendered you financially unable to cure the delinquency within a reasonable time or make full mortgage payments. Overuse of credit and improper priorities appear to be the real problem.
You do not meet the criterion that there is a reasonable prospect that you will be able to resume full mortgage payments after a temporary period of reduced or suspended payments, not exceeding 36 months, and will be able to pay the mortgage in full by its original maturity date extended, if necessary, up to 10 years. Large deficiency on truck repossession, car payments and other credit obligation are prohibitive. A substantial increase in earnings cannot be projected.
Through counsel, Rathgens submitted additional documentation and a proposed repayment plan. The additional evidence showed that her wages had increased to $185 per week, that she had unsuccessfully gone to great lengths to reduce her $286.71 per month car payments by trading in or trading down her Grand Prix, and that her son was graduating from vocational school and would likely be employed soon. Her proposed repayment plan involved reduced payments of $125 per month for 12 months, resumption of full payments thereafter, and a short extension of time to cover whatever deficiency remained.
HUD rejected Rathgens' proposed plan stating that after reviewing the entire file again, its position was unchanged. The January 31 letter stated:
There was no new evidence submitted that we were not aware of. We can accept the fact that her personal injuries were due to circumstances beyond her control. However, our decision was based on the apparent overuse of credit. This account was already delinquent when the qualifying circumstances occurred. Our analysis indicates that even if she remained on the job, her income was not sufficient to cover living expenses and credit accounts, let alone mortgage payments. The car payments alone were $286.00 and were current at the time of her office conference, whereas her mortgage payment of $175.00 was six months in arrears. Her request that HUD suspend the mortgage payments for 12 months while she pays for the car indicates improper priorities.
In reviewing HUD's decision to deny Rathgens's mortgage assignment request, the first task incumbent upon this Court is to determine the appropriate standard of review. The Administrative Procedure Act (APA) provides that "[a] person suffering legal wrong because of agency action, is entitled to judicial review thereof." 5 U.S.C. § 702 (1982). "Agency action" includes "the whole or a part of an agency grant of money, assistance, license, authority, exemption, exception, privilege, or remedy." Id. §§ 551(11), 551(13), 702. See Newbury Local School District Board of Education v. Geauga County Metro. *555 Housing Authority, 732 F.2d 505, 507 (6th Cir.1984). HUD's continued subsidy of Rathgens's mortgage qualifies as "assistance." Such informal agency action is reviewable under 5 U.S.C. § 706(2)(A) (1982). See Federal Property Management Corp. v. Harris, 603 F.2d 1226, 1230 (6th Cir. 1979); Anderson v. United States Dept. of Housing and Urban Development, 701 F.2d 112, 113 (10th Cir.1983).
Under section 706(2)(A), an agency action must be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1972). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Court is to decide only whether the agency's decision was based on a consideration of relevant factors and whether there has been a clear error of judgment. Id.; National Steel Corp. v. Gorsuch, 700 F.2d 314, 320 (6th Cir.1983).
HUD denied Rathgens's request because it found that she failed to meet two of its eligibility criteria. First, HUD found Rathgens's default was not caused by circumstances beyond her control. 24 C.F.R. § 203.650(5) (1983). While acknowledging that Rathgens's injuries were "qualifying circumstances" under the regulations, and while noting that the account was not in default at their inception,[1] HUD stated that "even if she remained on the job, her income was not sufficient to cover living expenses and credit accounts, let alone mortgage payments." HUD thus considered overextension of credit the cause of the default. Rathgens on the other hand, argued that the default was caused by her injuries.
Determining the specific cause of a particular event is always a difficult proposition. It demands especially close attention to relevant facts. Both parties have pointed out a cause for the default but they have overlooked the cause of both their causes and the cause most relevant to Congressional intent. It was Rathgens's torturous four-month marriage that caused the divorce, caused the injuries, caused the over-extension of credit, and caused the default. For seven years prior to her unfortunate marriage, Rathgens by herself was able to raise three children and make her house payments on an income that approached the poverty level. Along came a man who, in four short months, plunged her deeply into debt and beat her so badly she could not work for 14 weeks. These "circumstances" were the Congressionally mandated terminus of HUD's inquiry.
When Congress enacted the NHA, it intended to provide a decent home and suitable living environment for every American family. 12 U.S.C. § 1701t (1982). When Congress enacted the Foreclosure Avoidance Program, its intent in imposing the condition that the default be caused by circumstances beyond the mortgagor's control was to direct the Secretary's attention to "deserving homeowners in hardship cases." S.Rep. No. 924, 86th Cong., 1st Sess. Reprinted in 1959 U.S.Code Cong. & Ad.News 2844, 2853. Instead of finding its directive in the intention of Congress, HUD has adopted a "prudent lender" standard for administering the foreclosure avoidance program. Brown v. Lynn, 385 F.Supp. 986, 1000 (N.D.Ill.1974). This standard is contrary to the plain desires of Congress. Administration of the NHA in a "prudent lender" fashion subverts the very purpose of the Mortgage Insurance and Foreclosure *556 Avoidance programs. "Prudent lenders" service credit-worthy mortgagors. It is HUD's role under the NHA to insure the risky mortgages of low-income mortgagors that "prudent investors" will not take, and to accept assignment of risky mortgages whose mortgagors are experiencing temporary problems. Rathgens is such a "deserving" mortgagor experiencing temporary hardship.
Read in light of Congress's intent and HUD's mandate, Rathgens's default was clearly caused by circumstances beyond her control and HUD made a clear error in judgment by focusing solely on her honeymoon spending spree. HUD's own guidelines direct it to examples of "qualifying reasons for default" of which "losses of income due to divorce, illness or death" are included. HUD Handbook No. 4330.2 at 2-3.
As reflected in the HUD guidelines, the program apparently contemplated the necessary flexibility to deal with the inevitable temporary crises such as illness, temporary unemployment, etc., which all involved in the program knew would occur. Extensions, recasting of mortgages, purchase of the mortgages by the FHA prior to foreclosure and their subsequent recasting, all were obviously necessary to carry out the Congressional purpose as the guidelines recognize.
Brown v. Lynn, 385 F.Supp. 986, 1000 (N.D.Ill.1974). HUD ignored the effect of Rathgens's divorce on the default and discounted the effects the loss of 14 weeks' wages can have on a low-income family's savings and financial stability. HUD's mishandling of these relevant factors no doubt contributed to its error in judgment.
HUD's second ground for denying Rathgens's mortgage assignment was that there was not a reasonable prospect that Rathgens could resume full mortgage payments if the payments were reduced or suspended for up to 36 months and if the maturity date were extended up to 10 years. The reasons stated in the September 13 letter were (1) the large deficiency on the truck repossession, (2) car payments and other credit obligations, and (3) no projected substantial increase in earnings.
In her request for reconsideration, Rathgens submitted evidence on each of the cited reasons. She submitted the decree of divorce ordering her husband to defend and indemnify her on the truck deficiency and on 28% of her credit obligations. By Affidavit, she testified to an increase in monthly income of 22%. Finally, she listed several sources from which income could arise in the next 36 months. Her son was to graduate soon from vocational school with mechanic skills relieving her of substantial tuition and book expenses and providing a second income when he found work. Car payments were to end in less than 36 months. And she was trying to work more hours or find a second job.
To counter HUD charges of "improper priorities," Rathgens stated that she needed a car for transportation to work and for care of a diabetic child. Exhaustive attempts at trading in or trading down had not resulted in payments substantially lower than her present payments.
HUD's only response to Rathgens's new evidence of prospective repayment was that it had reviewed the information and found no reason to change its position. The only evidence in the administrative record that HUD considered the new evidence was a reduction in its income and expenses analysis sheet of the amount of Rathgens's credit obligation by the amount owed to her by her ex-husband. Nowhere does it appear that HUD considered Rathgens's substantial increase in income and her various prospects for even greater increases in the next 36 months. HUD's own guidelines state:

Household Composition. Both the income and expenses of a household will change as members are added to or leave the household. Living expenses may decrease as teen-age children leave home or increase as new members are added. Income may decrease as children reach the legal adult age and AFDC or Social Security payments are terminated; conversely, income could increase as these *557 members remain in the house and obtain full-time jobs.

Life Style: Each household distributes its income according to its own priority of needs. Some households prefer to hold housing expense to a minimum and spend a larger proportion of their income on recreation or non-essential items while others will forego non-essential items and invest a high percentage of their income in a home. The mortgagor's past spending pattern should be reviewed carefully. If the mortgagor has demonstrated the ability to make regular mortgage payments, even when those payments represented a large percentage of his or her income, the mortgage should be given the benefit of doubt when evaluating ability to resume full payments and pay in full by the maturity date.
HUD Handbook No. 4330.2 at 2-6, 2-7 (emphasis added). These guidelines are mandatory on HUD, Ferrell v. Pierce, 560 F.Supp. 1344 (N.D.Ill.1983), but nowhere does it appear that HUD addressed these factors. HUD apparently did not consider Rathgens's past spending patterns that included seven years of full mortgage payments. Nor did it consider her increased income or the list of prospective sources of new income.
Even if HUD had considered these factors off the record and rejected them, such rejection would be an abuse of its own guidelines that require that, "the mortgagor should be given the benefit of the doubt." HUD Handbook No. 4330.2 at 2-6. Rathgens's offer of reduced payments of $125 per month for 12 months followed by full payments and an extension of time to cover the deficiency was quite realistic and reasonable. Instead of giving Rathgens the benefit of the doubt, HUD's accusation of "improper priorities" leads this Court to believe that HUD was penalizing Rathgens for a car purchase that she had little control over and no power to rescind. In evaluating Rathgens's case under HUD's own criteria, this Court holds that HUD again abused its discretion by not considering the relevant factors and committed a clear error of judgment if it had considered those factors.
In summary, this Court finds that HUD abused its discretion in denying Rathgens's requested mortgage assignment. Rathgens's Motion for Summary Judgment (doc. no. 11) is therefore GRANTED. HUD's Motion for Summary Judgment (doc. no. 10) is, conversely, DENIED. Plaintiff, Mortgagee's, Motion to Dismiss (doc. no. 5) is DENIED and HUD is ORDERED to accept assignment of the mortgage.
IT IS SO ORDERED.
NOTES
[1] mortgage account is delinquent any time a payment is due and not paid. If the mortgagor fails to make any payment, or to perform any other obligation under the mortgage, and such failure continues for a period of 30 days, the mortgage shall be considered in default for the purposes of this part.
24 C.F.R. § 203.330 (1983). Rathgens finally paid the January 1 payment, so in her case, the 30-day period began February 1st thus making the default date March 3, 1982. See, Ferrell v. Pierce, 560 F.Supp. 1344 (N.D.Ill.1983).