Carlos GRASTY

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; Samuel R. Pierce, Jr., Secretary of U.S. Dept. of HUD; Joseph Russell, Chief Loan Management Branch, Philadelphia Area Office; and Fidelity Bond & Mortgage Co.

Civ. A. No. 85-1594.

United States District Court,
E.D. Pennsylvania.

Aug. 8, 1985.

Michael Donahue, Delaware Co. Legal Assistance Ass'n, Chester, Pa., for plaintiff.

Steven J. Engelmyer, Asst. U.S. Atty., U.S. Atty's. Office, Philadelphia, Pa., for defendants.

Mark E. Herrera, Klehr, Harrison, Harvey & Branzburg, Philadelphia, Pa., for Fidelity Bond & Mortgage Co.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

Plaintiff Carlos Grasty initiated this action seeking judicial review of the final decision of the United States Department of Housing and Urban Development (HUD) in which HUD refused to accept the assignment of his mortgage on the basis of its conclusion that he did not meet two of the six conditions required by 24 C.F.R. § 203.-650(a).[1] Presently before the Court are cross-motions for summary judgment filed by the plaintiff and defendants HUD, Samuel R. Pierce, Jr. and Joseph Russell.

---

1. Plaintiff also sought an Order directing defendant Fidelity Bond & Mortgage Company to suspend prosecution of any foreclosure proceedings against him. The parties, however, have agreed that no foreclosure proceedings would be initiated until the Court resolved the pending cross-motions for summary judgment, provided that the plaintiff resumes his mortgage payments.

## I. Assignment of Mortgages to HUD

The Secretary of HUD is authorized pursuant to 12 U.S.C. § 1715 u(b)(1) to acquire certain federally insured mortgages in order to avoid foreclosure and has promulgated regulations at 24 C.F.R. §§ 203.650–203.660 under the heading "Assignment of Mortgages to HUD" which implement this statute. Section 203.650(a) provides that the Secretary will accept assignment of certain federally insured mortgages when the following six conditions are met:

(1) The mortgagee has informed the mortgagor that it intends to foreclose the mortgage.

(2) At least three full monthly installments due on the mortgage are unpaid after application of any partial payments which may have been accepted but not yet applied to the mortgage account.

(3) The property is the mortgagor's principal place of residence. This criterion may be waived by the Secretary if the property has been leased or rented and the rental income has been applied to the mortgage delinquency or to effect repairs necessary to maintain the property in a safe and habitable condition or if such waiver is determined to be in the best interests of the Department.

(4) The mortgagor does not own other property subject to a mortgage insured or held by the Secretary. This criterion may be waived by the Secretary if the income from such other property is the mortgagor's principal source of income.

(5) The mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments.

(6) There is reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years.

In the case presently before the Court, HUD found that conditions five and six were not met.

## II. Factual Background

Plaintiff purchased a home in 1978 located at 237 East 22nd Street in Chester, Pennsylvania. The mortgage on the home is insured by HUD and the mortgagee is defendant Fidelity. On April 13, 1984, the plaintiff made a mortgage payment which defendant Fidelity subsequently credited as the plaintiff's February 1, 1984 payment after learning that the check tendered by the plaintiff on April 3, 1984 to cover his February and March mortgage payments was not secured by sufficient funds. The record does not show another mortgage payment by the plaintiff after the payment credited by defendant Fidelity as covering the amount due on February 1, 1984.

Defendant Fidelity wrote to the plaintiff on May 18, 1984 giving him a preliminary notice as required by 24 C.F.R. § 203.651. The letter informed the plaintiff that his mortgage was in serious default and that foreclosure proceedings would be initiated unless he cured the default by immediately paying the $1,119.16 which he owed or by making other "acceptable arrangements." The letter also explained that the plaintiff might be eligible for an assignment of his mortgage to HUD if the default was caused by circumstances beyond his control and that defendant Fidelity was considering whether or not to request HUD to accept assignment of the mortgage.

A second letter as required by 24 C.F.R. § 203.652 was sent by defendant Fidelity to the plaintiff on June 14, 1984 notifying him of defendant Fidelity's determination that it would not ask HUD to accept assignment of the mortgage because "we do not believe the default is due to circumstances beyond your control nor do we believe there is [a] reasonable prospect for the resumption of regular payments." It was further noted in the letter that the plaintiff could "appeal" defendant Fidelity's decision that he was not eligible for the assignment program by contacting HUD within

fifteen days from June 14, 1984 and that defendant Fidelity would not foreclose until HUD had time to review the case if the plaintiff requested HUD to accept the assignment of his mortgage. *See* 24 C.F.R. § 203.652(b).

The plaintiff contacted HUD and requested that it accept the assignment of his mortgage. Section 203.654(a) of Title 24 of the Code of Federal Regulations requires the mortgagee and the mortgagor to furnish all information requested by HUD within 15 days of the date of HUD's request in order to assist HUD in making a preliminary determination of whether or not to accept assignment of the mortgage. Pursuant to Section 203.654(a), HUD requested that the plaintiff complete and return Form 92068F.

The plaintiff's completed Form 92068F showed that the $337 monthly social security check of the plaintiff's father would be used to meet family obligations and that the plaintiff's monthly New York unemployment check of $424 and another relative's monthly income of $360 were available to meet mortgage payments and other expenses. The plaintiff also noted on the form that the reason he was behind in his mortgage payments was that:

> Emergency came up + had to travel. Got behind in payments + tried to recuperate money. Collecting unemployment now and took awhile to get established. So, kept taking needed money out of saved mortgage money to buy food, pay light, water etc. Also, then grandmother died and money was needed for travel + funeral. Spend x money job searching. Now call myself freelance interpreter until I get job.

On an attachment to Form 92068F, the plaintiff wrote that one reason for his getting behind in his payments was that it "took awhile" for his unemployment compensation application to be processed, but that he was now "saving up" and that once caught up, he knew he could maintain his payments.

By letter dated January 21, 1985, HUD notified the plaintiff that its initial determination was that it could not accept assignment of his mortgage. The reasons which HUD gave for its initial determination included the following: [2]

> Based on the information submitted to this office, it is shown that you had sufficient income to make your mortgage payment for March 1984 and utilities [3], however, you chose to use monies for travel. In addition, you allege that income was also used to pay utilities but no supporting documents have been submitted to this office.
>
> It does not appear that the default was caused by circumstances beyond your control.
>
> The financial information submitted to this office, shows income is received from various sources and in different amounts. Because we have no verification of these claims at this time, we cannot determine if after a temporary period of forbearance you will be able to resume full mortgage payments.

The letter also requested the plaintiff to furnish HUD with proof of all monies spent for high utility bills in February and March of 1984, verification of the source and amount of all net income received from February 1984 until the present, submission of the reason for and proof of the emergency travel which plaintiff claimed

**2.** HUD initially concluded that the plaintiff had failed to meet the condition provided by 24 C.F.R. § 203.650(a)(3) that the mortgaged property be the principal residence of the plaintiff. This initial conclusion was not adopted by HUD as one of its final reasons for refusing to accept the assignment of the plaintiff's mortgage. HUD, however, argues that the Court should find that the mortgaged property was not the plaintiff's principal residence. The Court will not entertain this argument because its scope of

review is limited to reviewing the findings of fact and conclusions of law which comprise HUD's final decision.

**3.** HUD's analysis of the plaintiff's income and expenses shows a total net effective monthly income of $1,134.66, and monthly expenses of $405.00. The plaintiff therefore had $729.66 available to make his monthly mortgage payment of $351.00.

required the use of mortgage monies earmarked for the March 1984 payment, copies of all outstanding debts, and the source and amount of all expected income for the next year. The requested information, the letter noted, was needed by HUD to make a final determination.

The material which the plaintiff submitted to HUD included two utility bills, various unemployment compensation material from New York, the plaintiff's affidavit, his passport, two bills from Macys, a social security benefit statement for the plaintiff's father showing he received $4219.20 in benefits for 1984, a blank employment contract from the Barbizon Management Agency and a blank application for admission to the Trans World Airlines Travel College. The submitted material shows that the plaintiff has five years of work experience as a travel agent, one year of work experience as a hotel manager, and eight years of work experience as an interpreter; that he was entitled to collect unemployment compensation from New York in the amount of $106.00 per week from August of 1983 until August 12, 1984 and did collect $2,385.00 of unemployment compensation during 1984; and that he left for Spain on February 25, 1984 to move from Grenada to Barcelona and returned to New York on April 2, 1984. In addition to the submitted material, a conference was held on February 11, 1985 at which, according to notes taken by a HUD representative, the plaintiff explained that he had gone to Spain in October of 1983 to search for possible employment and that his trip to Spain from February 25, 1984 to April 2, 1984 was made "because friends he was living with had to give up their home in Grenada."

HUD's final decision of February 28, 1985 denied the plaintiff's request that HUD accept the assignment of his mortgage and gave the following reasons for the denial:

> The default was not caused by a circumstance or set of circumstances beyond your control which temporarily rendered you financially unable to cure the delinquency within a reasonable time or make full mortgage payments.
>
> Based on the information submitted at the appeal conference, it was revealed that you were receiving unemployment compensation at the period of default. However, it was discontinued because of your choice to leave the country and remain for a few months.
>
> In addition, it was shown that relatives occupied the property and was [sic] receiving income also.
>
> Therefore, no evidence was submitted to establish that the default was due to circumstances beyond your control.
>
> Failure to show that you will be receiving sufficient income in the future, determines that you will not be able to resume full mortgage payments after a temporary period of forbearance.

*See* 24 C.F.R. § 203.650(a)(5) and (6).

### III. Scope and Review

This Court's review of HUD's final decision of February 28, 1985 is dictated by 5 U.S.C. § 706(2)(A) which provides that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions of law found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." The Supreme Court has characterized the standard of review under 5 U.S.C. § 706(2)(A) as a "narrow one" in which a "court is not empowered to substitute its judgment for that of the agency." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

### IV. Discussion

One of the two conditions which HUD concluded was not met by the plaintiff was 24 C.F.R. § 203.650(a)(6) which provides that there must be "a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years."

HUD Handbook No. 4330.2, entitled *Administration of the Home Mortgage Assignment Program,* provides the following HUD guidelines with respect to Section 203.650(a)(6):

> Future ability to pay—not present income or credit history—is the key factor in evaluating this criterion. No applicant for assignment shall be determined ineligible based simply upon lack or type of income at the time the assignment request is processed. All present and prospective sources of income … must be considered when determining reasonable prospect for repayment.
>
> ....
>
> *Where a person is presently out of work and is not suffering from any disability that will prevent reemployment, and is seeking work, all doubts as to future employability should be resolved in his/her favor.*

*Id.* at 2–5—2–7 (emphasis added).

■ In light of HUD's guidelines, this Court concludes that HUD's finding that the plaintiff failed to show that he would receive sufficient income in the future and therefore did not meet the condition set by 24 C.F.R. § 203.650(a)(6) is an abuse of discretion. The record shows that the plaintiff's unemployment was not due to disability and that the plaintiff had worked for a total of fourteen years as a travel agent, a hotel manager, and an interpreter prior to being unemployed. Resolving all doubts about the future employability in the plaintiff's favor, as the HUD guideline directs, the Court believes that the record contains evidence supporting findings that the plaintiff would be employed in the future, would earn sufficient income to resume full mortgage payments within the period allotted by the regulation, and would be able to pay the mortgage in full.

The other condition which HUD concluded was not met by the plaintiff was 24 C.F.R. § 203.650(a)(5) which provides that the mortgagor's default must have been "caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments." The record shows that the plaintiff was entitled to collect unemployment compensation from August of 1983 until August 12, 1984[4] and that he would have been able to meet his mortgage payment obligations had he collected the unemployment compensation. The reason, however, that he could not collect his unemployment compensation from February 25, 1984 until April 2, 1984 was because he was out of the United States during that period.

■ The controlling issue to be resolved in determining whether the plaintiff has met the condition specified by 24 C.F.R. § 203.650(a(5) is that of whether his trip to Spain from February 25, 1984 to April 2, 1984 was due to circumstances beyond his control. The record shows that the reason for the trip was to move possessions which he had been storing with friends in Grenada, Spain to Barcelona, Spain and that the move was necessitated by his friends having to give up their home in Grenada.

Although the phrase "circumstances beyond his control" is not defined in either the regulations or 12 U.S.C. § 1715 u(b)(1), HUD's guidelines include "[c]urtailment of family income, such as unemployment or underemployment; loss, reduction or delay in receipt of federal, State, municipal benefits … or of private benefit payments …; loss of support payments; or other loss of income due to divorce, illness or death" as

---

**4.** The plaintiff argues that HUD erred in finding the plaintiff was receiving unemployment compensation during the period of default. Whether or not the record supports such a finding is irrelevant. What is relevant is that the record supports the findings that the plaintiff was entitled to collect unemployment compensation during the period of default; that he did not receive unemployment compensation during

that period because he left the country; and that he would have been able to meet his monthly mortgage payments had he received the unemployment compensation. The plaintiff in his brief notes that "[c]learly, if one were to include the unemployment compensation that Mr. Grasty could not, and did not, receive, it is clear that Mr. Grasty could have made his mortgage payments."

examples of qualifying reasons for default. These examples have been characterized by the court in *Brown v. Lynn*, 385 F.Supp. 986, 1000 (N.D.Ill.1974), as reflecting "the necessary flexibility [needed] to deal with the inevitable temporary crises such as illness, temporary unemployment, etc., which all involved in the program knew would occur." *Accord Federal National Mortgage Association v. Rathgens*, 595 F.Supp. 552, 554 (E.D.Pa.1984). This Court does not believe that the plaintiff's need to move his possessions from Grenada to Barcelona constitutes an inevitable temporary crisis and therefore HUD did not err in concluding that there was no evidence to establish that the default was due to circumstances beyond his control.

Having found that HUD did not err in finding that the plaintiff did not meet all six of the conditions set forth in 24 C.F.R. § 203.650(a), this Court concludes that HUD properly denied to accept the assignment of the plaintiff's mortgage.

An appropriate Order follows.