**In re Evelyn MADISON, Debtor.**

**Evelyn MADISON, Plaintiff-Appellant,**

v.

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT et al., Appellees.**

Civ. A. No. 84–5294.
Bankruptcy No. 83–01573G.
Adv. No. 83–1524G.

United States District Court,
E.D. Pennsylvania.

April 29, 1986.

Michael Donohue, Delaware County Legal Assistance Ass'n, Inc., Chester, Pa., for plaintiff-appellant.

Virginia R. Powell, Asst. U.S. Atty., and Edward S.G. Dennis, U.S. Atty., Philadelphia, Pa., for appellees.

MEMORANDUM AND ORDER

DITTER, District Judge.

Under 12 U.S.C. § 1715u, a mortgagor who has defaulted on her HUD-insured mortgage may seek protection from foreclosure by requesting HUD to take an assignment of the mortgage from the mortgagee. In this case, Evelyn Madison seeks review of a decision of the Secretary of

Housing and Urban Development not to accept an assignment of her HUD-insured mortgage. Mrs. Madison's contentions were considered by the bankruptcy court, 42 B.R. 302, which refused to disturb HUD's determination. I agree and therefore affirm.

In June, 1981, Mrs. Madison and her son Wendall purchased a house in Chester, Pennsylvania, with a loan secured by a HUD-insured mortgage. At that time, Mrs. Madison and Wendall had an income of approximately $1,399. per month. Mrs. Madison lives in this house with her husband, her son Wendall, and her six other children.

Mrs. Madison made her monthly mortgage payments of $427 through January, 1982. After she had fallen behind in her payments, however, the mortgagee alerted her to the possibility of foreclosure. In June, 1982, the mortgagee notified Mrs. Madison of its intention to foreclose and of her right to request HUD to take an assignment of the mortgage.

Mrs. Madison then applied to HUD for an assignment, citing as reasons for the default the payment of other loans and bills, and, in particular, the payment of expenses associated with her son Todd's attending college. After reviewing the materials provided by Mrs. Madison and the documents provided by the mortgagee, HUD preliminarily rejected Madison's application, stating that HUD had not been shown that the default was caused by circumstances beyond Mrs. Madison's control or that Mrs. Madison had the ability to cure the default within the time periods provided by statute.

Mrs. Madison and her counsel then requested and attended a conference with an officer of HUD to present additional support for her application. On January 28, 1983, HUD rejected Madison's application, writing,

> The default must have been caused by a circumstance or set of circumstances beyond the mortgagor's control which temporarily rendered the family financially unable to cure the delinquency within a reasonable time or make full mortgage payments.
>
> It does not appear that your failure to make your mortgage payment was caused by circumstances beyond your control. It appears that your net income of $1,399 per month was received regularly and was enough to cover your monthly mortgage of $427 and your other living expenses. It appears, however, that you decided to pay other bills which we believe were not as important.

Mrs. Madison seeks to have that determination set aside and to have the court order HUD to accept the assignment of her mortgage.

The goal of the National Housing Act, of which 12 U.S.C. § 1715u is a part, is to provide a suitable living environment for every American family. 12 U.S.C. § 1701t. To meet that goal, Congress established a mortgage-insurance program that enabled lenders to offer virtually risk-free mortgages to low-income families, 12 U.S.C. § 1709(b)(5), and a foreclosure-avoidance program whereby HUD could help a mortgagor avoid foreclosure by acquiring the mortgage, suspending payments for up to 36 months, and refinancing the debt for an extended period of up to ten years. *Federal National Mortgage Association v. Rathgens*, 595 F.Supp. 552 (S.D.Ohio 1984); 12 U.S.C. § 1715u; 24 C.F.R. § 203.650.

Section 1715u provides in part that "[u]pon receiving notice of the default of any mortgage covering a ... residence ... insured under this chapter, the Secretary, in his discretion and for the purpose of avoiding foreclosure of the mortgage ... may acquire the loan and security therefore...." HUD has promulgated regulations detailing the conditions that must be satisfied before HUD will accept a mortgage. *See* 24 C.F.R. §§ 203.650 *et seq.* Section 203.650 of these regulations provides a six-part test that a mortgagor must satisfy.[1]

---

1. 24 CFR § 203.650 provides in part as follows:

(a) The Secretary will accept assignments

In its final determination in this case, HUD contends only that Mrs. Madison failed to meet the condition that "[t]he mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments." 24 C.F.R. § 203.650(a)(5).

While HUD has not chosen to define "circumstances beyond the mortgagor's control," it has given an unexhaustive list of examples:

(1) Curtailment of family income, such as unemployment or underemployment; loss, reduction or delay in receipt of federal, state, municipal benefits (e.g., social security, supplemental security income, public assistance, government pensions) or of private benefit payments (e.g., pensions, annuities, retirement plans); loss of support payments; or other loss of income due to divorce, illness or death.

(2) Uninsured damage to the mortgaged property, affecting its livability and necessitating costly repairs.

(3) Expenses related to death or illness in the mortgagor's household or of family members living outside the household which have significantly reduced the amount of income available to meet the mortgage payment.

(4) Unanticipated increase in payments to mortgage escrow account to compensate for past underestimate requirements. . . .

HUD Handbook No. 4330.2, *Administration of the Home Mortgage Assessment Program* 2–3—2–4 (1979).

District courts have provided further meaning to the term. In *Brown v. Lynn*, 385 F.Supp. 986, 1000 (N.D.Ill.1974), the court observed that "as reflected in the HUD guidelines, the program apparently contemplated the necessary flexibility to deal with the inevitable temporary crises such as illness, temporary unemployment, etc. which all involved in the program knew would occur." Relying on legislative history to section 1715u, the district court in *Federal National Mortgage Association v. Rathgens*, 595 F.Supp. 552 (S.D.Ohio 1984), stated that "[w]hen Congress enacted the Foreclosure Avoidance Program its intent in imposing the condition that the default be caused by circumstances beyond the mortgagor's control was to direct the Secretary's attention to 'deserving homeowners in hardship cases.'" *Id.* at 555 (quoting S.Rep. No. 924, 98th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Ad.News 2844, 2853).

█ The element of choice need not be completely lacking in order for a condition

---

of mortgages insured under this part in order to avoid foreclosures when the following conditions are met:

(1) The mortgagee has informed the mortgagor that it intends to foreclose the mortgage;

(2) At least three full monthly installments due on the mortgage are unpaid after application of any partial payments which may have been accepted but not yet applied to the mortgage account.

(3) The property is the mortgagor's principal place of residence . . .

(4) The mortgagor does not own other property subject to a mortgage insured or held by the Secretary . . .

(5) The mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments.

(6) There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years.

(b) A mortgage shall not be eligible for assignment in any case where:

(1) The mortgaged property has been abandoned or vacant for more than 60 days.

(2) The mortgagor, after being clearly advised of the options available for relief, has clearly stated in writing that he has no intention of fulfilling his obligation under the mortgage; or

(3) The mortgagee is prevented by law from initiating foreclosure of the mortgage.

(4) The mortgagor owns two or more properties occupied by tenants who are paying rent, and the rental income from the property under review is not being applied to the mortgage on that property.

to be outside the mortgagor's control. Judge Fullam has stated recently that the "hardship cases" about which Congress was concerned include those situations where mortgagors face "Hobson's choices, involving options that, to protect something important, cause the people to face temporary financial adversity." *Harris v. United States Department of Housing and Urban Development*, No. 85–489, slip op. at 2–3 (E.D.Pa. April 8, 1986) [Available on WESTLAW, DCTU database].[2]

For example, in *James v. United States Department of Housing and Urban Development*, No. 4–81–457 (D.Minn. July 8, 1982), mortgagor was left in custody of her grandchildren after her daughter and son-in-law were incarcerated. Mortgagor was faced with additional expenses and chose to resign her employment to accept a lower-paying job with a less-distant employer in order to care for the grandchildren. The district court rejected HUD's contention that the element of choice brought the default within the mortgagor's control and directed HUD to take an assignment of the mortgage. *Id.*, slip op. at 5. Similarly, in *Rickards v. United States Department of Housing and Urban Development*, 623 F.Supp. 463 (E.D.Pa.1985), plaintiff argued, *inter alia*, that his expenditure of over $4,000 in legal fees defending an assault prosecution was a cause of his default. Chief Judge Luongo remanded the case to HUD for the purpose of clarifying its treatment of the legal expense issue, implicitly recognizing that certain voluntary decisions may be actually outside the decision-maker's control. *Id.* at 467. *See also Weigant v. United States Department of Housing and Urban Development*, Misc.

No. 84–839, slip op. at 4 (E.D.Pa. Jan. 10, 1985) [Available on WESTLAW, DCTU database].

While a "voluntary" decision by a mortgagor may be considered outside the mortgagor's control, a decision to risk nonpayment of the mortgage and pursue some other option must rise to "hardship" proportions or otherwise involve "Hobson's choices" before HUD's refusal to accept an assignment runs afoul of the Act. *See, e.g., Grasty v. United States Department of Housing and Urban Development*, 636 F.Supp. 912 (E.D.Pa.1985) (plaintiff's trip to Spain to move possessions which had been stored with friends who were moving did not constitute circumstances beyond mortgagor's control).

HUD's action is reviewable under 5 U.S.C. § 706(2)(A). *See Anderson v. United States Department of Housing and Urban Development*, 701 F.2d 112 (10th Cir.1983); *Rickards*, 623 F.Supp. at 465. Under *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971) the issue in this case then is whether HUD's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. To make this finding the court must consider whether the decision was based on a consideration of all the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* (citations omitted).[3]

---

**2.** To the extent dictum in *Harris* can be read to say that a choice or circumstance is beyond a mortgagor's control unless the mortgagor's conduct evinces a bad faith disregard for the mortgage obligation, I respectfully am compelled to disagree.

**3.** *Overton Park* set forth a three-part test for evaluating informal agency action. First, the court must determine whether the agency acted within the scope of its authority. 401 U.S. at 415–16. Next, the court must determine whether the choice made by the agency was arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law. *Id.* at 416, 91 S.Ct. at 823–24. Finally, the court must ascertain whether the agency followed the necessary procedural steps. *Id.* at 416–17, 91 S.Ct. at 823–24.

In this case, mortgagor's challenge focuses almost exclusively on whether the agency's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. It is clear that she does not take odds with the procedural steps followed by HUD. To the extent she argues that HUD acted outside the scope of its authority, I reject that contention and conclude that on the facts of this case

■ In support of her position before HUD, Mrs. Madison explained the default by stating that she had to provide $800 to allow her son Todd to start college at Ohio Tech in February, 1982. She claimed that while Todd had applied for a grant to cover these costs, that grant had not materialized when he was to leave for school. Mrs. Madison told HUD that after providing the money to Todd and taking care of family expenses, she could not meet her mortgage payments. When the grant never materialized, Mrs. Madison was unable to cure the default.

Mrs. Madison first argues that she was presented with a choice between precluding her son from obtaining a college education or missing her mortgage payment and that this is precisely the type of intractable dilemma the National Housing Act was supposed to alleviate. However, her argument is misleading to the extent she contends that Todd could not go to college if she met her mortgage obligation. Mrs. Madison asserted that she paid the money to allow Todd to go to a specified out-of-state college at a specified time. She did not explain to HUD why Todd wanted or needed to go out-of-state to a particular college or why it was important for him to go in February of 1982. She did not explain why less expensive local education was either unavailable or undesirable. In short, Mrs. Madison failed to show why it was compelling that Todd go to Ohio Tech in February, 1982.[4]

It may well be that there were compelling reasons for Todd to matriculate at Ohio Tech in February, 1982. However, the only information available to HUD in making its determination was that contained in the administrative record. It is the responsibility of the mortgagor to provide HUD with all the information it needs to make a decision about an assignment request. *McCall v. United States Department of Housing & Urban Development,* No. 85–1300 (E.D.Pa. Sept. 25, 1985) [Available on WESTLAW, DCTU database]; 24 C.F.R. § 203.654. Mrs. Madison was told by letter of her right to submit additional evidence at a face-to-face conference. As has been stated previously, Mrs. Madison and her counsel did attend such a conference but simply failed to present compelling evidence.

In a related argument, Mrs. Madison states that she would not have had to make the $800 payment for her son's college education at Ohio Tech if the government grant had materialized. She contends that the failure to receive this grant constituted "loss, reduction, or delay in receipt of federal, state, [or] municipal benefits ...," and therefore, by HUD's own guidelines, she has shown circumstances beyond her control. Again, however, Mrs. Madison failed to support this contention before HUD. She offered no documentation or identification of the entity to which Todd had applied, of the date the grant was expected, of the reasons why she expected to receive it, or of the reasons why it did not materialize. On such an inadequate record, I cannot say that HUD abused its discretion in failing to equate Mrs. Madison's asserted failure to receive benefits with the grounds enumerated in the HUD guidelines.

In conclusion, I cannot find that the Secretary abused his discretion or made a clear error in judgment. It may seem harsh to force a mortgagor to choose between paying her mortgage and sending her child to the college of his choice and then not term that choice a "hardship situation." However, Mrs. Madison did not present facts to HUD that would demonstrate that she was faced with a choice that would justify my vacating the Secretary's determination.

HUD's decision is within the range of choices Congress has allowed the Secretary to make.

**4.** Mrs. Madison also failed to explain whether the $800 was for spending money, tuition, books, housing, or some other purpose. While two invoices from the Bell and Howell Education Group, Inc. to Mr. C. Todd Madison have been made a part of the record, (A.R. 009–010), there seems to be no explanation of what these invoices represent.