**In re Syed and Atia ZAIDI Debtors.**

**Syed and Atia ZAIDI, Plaintiffs,**

**v.**

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; Samuel R. Pierce, Jr., Secretary of the U.S. Department of Housing and Urban Development; Joseph Russell, Chief Loan Management Branch, Philadelphia Area Office; Indiana Mortgage Company and Edward Sparkman, Trustee, Defendants.**

**Bankruptcy No. 87–01120S.**
**Adv. No. 87–0570S.**

**United States Bankruptcy Court, E.D. Pennsylvania.**

**Sept. 28, 1987.**

Michael Donahue, Chester, Pa., for plaintiffs/debtors.

Virginia R. Powel, Philadelphia, Pa., for defendant/U.S.A.

Peter M. Campanella, Regional Counsel, HUD, Philadelphia, Pa., for defendant/HUD.

Gary E. McCafferty, Philadelphia, Pa., for defendant/Indiana Mortg. Co.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The Plaintiffs in this proceeding and Debtors in this bankruptcy case, SYED and

ATIA ZAIDI, (hereinafter referred to as "the Debtors"), filed the instant adversarial Complaint seeking declaratory and injunctive relief, as well as judicial review of a final decision of the United States Department of Housing and Urban Development (hereinafter referred to as "HUD"), in which HUD refused to accept the assignment of their mortgage on the basis of HUD's conclusion that they did not meet one of the six conditions required by 24 C.F.R. § 203.650(a). The one condition upon which HUD's refusal was premised was that the default was not caused by circumstances beyond the Debtors' control. The question is presented on the cross-motions for summary judgment filed by the Debtors and HUD[1] under Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ.P.") 56 which is made applicable to this proceeding by Bankruptcy Rule (hereinafter referred to as "B.R.") 7056. For the reasons stated herein, we will grant the Debtors' Motion for summary judgment and this matter will be remanded for HUD's reconsideration and for further evidence in accordance with this Opinion.

## THE HUD MORTGAGE ASSIGNMENT PROGRAM

The HUD mortgage assignment program is set forth in 12 U.S.C. § 1715u, 24 C.F.R. § 203.650 et seq., and HUD Handbook 4330.2. The Debtors' mortgage is insured by HUD pursuant to its Section 221 program, which is designed to provide qualified low and moderate income families with an opportunity to procure FHA-insured loans to purchase homes otherwise unavailable to them. 12 U.S.C. § 1709(a). To further assist eligible mortgagors, Congress enacted the Assignment Program, under which HUD is authorized to acquire the loan and surety on a FHA-insured mortgage in order to avoid foreclosure. 12 U.S.C. § 1715u.

When a mortgagor has missed at least three mortgage payments and requests assistance after the Mortgagee determines

not to accept same, HUD must consider whether or not to take an assignment of the mortgage. Taking an assignment prevents further mortgage foreclosure proceedings. 24 C.F.R. § 203.652. If the mortgagor owns only one property, and such property is (1) subject to a FHA-insured mortgage and (2) the mortgagor's principal residence, then the determination of whether or not to take the assignment turns on two basic criteria:

1. The default must have been caused by circumstances beyond the mortgagor's control; and

2. There is a reasonable prospect that the mortgagor will, after a period of reduced or suspended payments, not to exceed 36 months, be able to resume normal payments and pay off the mortgage, plus any arrearages, over its remaining life, extending by up to ten years, if at the date of default, the mortgage was more than 10 years old. 24 C.F.R. § 203.654.

Procedurally, the mortgagee must initially consider the mortgagor's eligibility for assignment. "If the criteria are met, the mortgagee shall request that (HUD) accept an assignment of the mortgage." 24 C.F.R. § 203.654.

In the event that a mortgagee refuses to recommend assignment to HUD, it must advise the mortgagor of this fact and its reasons for doing so. 24 C.F.R. § 203.656. The mortgagor may then directly ask HUD to review his/her eligibility for assignment under the same procedural format (first by written submission and then by conference). 24 C.F.R. §§ 203.658, 203.660. If, at any stage of this process, it is determined that the criteria for eligibility are met, HUD must direct the mortgagee to assign, and the mortgagee must assign, the mortgage to HUD, notwithstanding any prior decision by the mortgagee not to recommend an assignment. 24 C.F.R. § 203.-654, 203.662(c).

---

1. The Debtors' Complaint also seeks to enjoin Indiana Mortgage Company from taking any further action for foreclosure. Although Indiana Mortgage Company has filed an Answer, it has not taken any position with respect to the within cross-motions for summary judgment.

After receiving the initial assignment request, HUD requires the mortgagor and the mortgagee to furnish requested information in order to assist it in making a preliminary determination as to whether acceptance of the assignment is warranted. 24 C.F.R. § 203.654. If HUD determines that the defaulting mortgagor has failed to satisfy the Assignment Program's eligibility criteria, it will issue a preliminary rejection letter. 24 C.F.R. § 203.650(a). Failure to satisfy any one of the Program's six criteria will result in a preliminary denial of the mortgagor's application. A mortgagor whose request for assignment has been preliminarily denied by HUD is entitled to ask for further consideration and may submit additional information to the agency in a face-to-face conference. After reviewing all the evidence, HUD will make a final determination as to whether each requirement for acceptance into HUD's Assignment Program has been met. 24 C.F.R. § 203.658.

The Assignment Program is the product of litigation which began in 1973 over HUD's failure to adequately supervise mortgagees in Chicago, *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974). This suit challenged HUD's failure to properly oversee the servicing and foreclosure practices of its approved lenders. The class of plaintiffs ultimately certified was nationwide in scope and consisted of all mortgagors whose mortgages were insured under HUD Sections 203, 221(d)(2) and 235 Programs. In settlement, HUD agreed to implement and continue this program to take assignments of eligible mortgages in order to avoid foreclosure. The court recognized HUD's statutory obligation to maintain an adequate procedure to avoid foreclosures resulting from temporary economic crisis beyond the mortgagors' control.

## FACTUAL BACKGROUND

The Debtors, natives of India, purchased their home in December, 1982, and, since then, have used it as their sole family residence for themselves and their four minor children. This purchase was made with a loan secured by a note and mortgage in favor of Alliance Mortgage Corporation.[2] HUD insured the mortgage pursuant to Section 221 of the National Housing Act.

The Husband-Debtor's employment, with Hahnemann Hospital, ceased on November 21, 1983, resulting in insufficient income to meet his mortgage payments, and resulting in the subsequent default. The Debtors failed to make their mortgage payments in March, April and May, 1984. In May, 1984, Alliance requested that the Debtors fill out a "Request for Financial Information" (hereinafter referred to as "Form # 1") so that Alliance could determine whether the Debtors' situation would meet HUD's standards for assignment. The Debtors completed the information requested on "Form # 1" on May 15, 1984. Thereafter, Alliance decided not to request HUD to accept an assignment and so informed the Debtors.

The Debtors then contacted HUD directly to request assistance under the HUD Assignment Program. On or about June 25, 1984, HUD acknowledged the Debtors' request for a HUD assignment and asked that additional information be submitted to HUD in order to process the Plaintiffs' Application. Pursuant to HUD's request, the Debtors filled out a second "Request for Financial Information" (hereinafter referred to as "Form # 2") dated July 3, 1984.

On November 23, 1984, a preliminary rejection letter was issued by HUD informing the Debtors that they had failed to meet some of the Assignment Program's eligibility criteria. The following reasons were given for HUD's rejection of the Debtors' Assignment request: (1) the Debtors had failed to support their claim that the default was caused by circumstances beyond their control; and (2) there was no reasonable prospect that the Debtors would be able to resume full mortgage payments within thirty-six (36) months. In the same letter, the Debtors were advised of their right to submit additional information to HUD to support their claim and of their right to request a face-to-face conference.

---

**2.** Indiana Mortgage Company is apparently the successor to Alliance Mortgage Corporation.

A conference was held on December 4, 1984, at which time the Husband-Debtor met with a HUD representative. He submitted additional information to the agency at this time.[3]

After reviewing the supplemental information, HUD informed the Debtors by letter dated January 2, 1985, of HUD's final decision to reject the Debtors' assignment request. The sole reason for HUD's refusal to accept assignment of the Debtors' mortgage was HUD's determination that the Debtors failed to meet the Assignment Program's requirement that the mortgagor's default be caused by circumstances beyond the mortgagor's control. 24 C.F.R. § 203.650(a). The final decision states in pertinent part:

The reasons we cannot accept the assignment are:

The default was not caused by a circumstance or set of circumstances beyond your control which temporarily rendered you financially unable to cure the delinquency within a reasonable time or make full mortgage payments.

You were employed in a position that had paid you $20,641.70 for the first eleven months of 1983 and was providing you with ample income for making your mortgage payments. Further, it appears that as a result of a voluntary act by you (leaving your job to go to India) you were terminated by your employer. Hence the loss of employment and subsequent loss of income were not due to circumstances beyond your control. Administrative Record p. 68.

Subsequent to HUD's denial of the Debtor's Application for Assignment, the Husband-Debtor became re-employed at St. Agnes Medical Center in March, 1985. The Debtors then entered into a repayment and forbearance agreement with Indiana Mortgage Company (successor to Alliance) which was memorialized by letter dated October 14, 1985. As a result of the Debtors' alleged breach of the repayment agreement, Indiana commenced the process to determine the Debtors' eligibility for the assignment program in January, 1986. Based upon the Debtors' failure to supply the information requested within fifteen days, Indiana again decided not to request HUD to accept assignment, and again advised the Debtors of their right to request assignment directly to HUD.

The Debtors, in April, 1986, again applied directly to HUD for an assignment of their mortgage. They filled out their third form or "Request for Financial Information." However, by letter dated January 21, 1987, HUD refused to consider the Debtors' request for assignment of April, 1986, on the grounds that HUD's original assignment decision of January 2, 1985, was final, given that the previous default had never been cured or reinstated. HUD Handbook 4330.2, Chapter 3, ¶ 3–6(3).

The Debtors then filed the instant Adversary proceeding.

## DISCUSSION

■ The characterization of agency action as adjudicatory, legislative, or as an informal agency action is important in determining the appropriate standard of judicial review. *Armstead v. HUD*, 815 F.2d 278, 281 (3d Cir.1987). In *Armstead*, the Court assumed, without deciding, that the arbitrary and capricious standard applied in its review of HUD's refusal to accept a mortgage into its assignment program, citing to *Anderson v. HUD*, 701 F.2d 112 (10th Cir.1983), in which the Tenth Circuit held that HUD's determination not to accept an assignment was reviewable as an informal agency action. *Id.*

There are numerous other cases in this district which have applied the arbitrary and capricious standard in the review of a

---

**3.** Although HUD admits that additional information was supplied at this time, the Administrative Record contains no such supplemental information. *See* pages 414–15 *infra.* HUD did file an affidavit of the HUD employee who conducted the conference, dated July 14, 1987, with its Motion for Summary Judgment which stated, *inter alia,* that "at that conference, Mr. Zaidi submitted additional documents in support of his assignment request. To the best of my knowledge and recollection, among these documents were round trip airplane tickets from the United States to India and back totalling several thousands of dollars."

HUD refusal to accept a mortgage into its assignment program. *See, e.g., Harris v. HUD*, C.A. No. 85–489 (E.D.Pa. April 9, 1986) [Available on WESTLAW, DCT database]; *In re Madison*, 60 B.R. 837 (E.D.Pa. 1986), *affirming*, 42 B.R. 302 (Bankr.E.D. Pa.1984); *Rickards v. HUD*, 623 F.Supp. 463 (E.D.Pa.1985); *McCall v. HUD*, C.A. No. 85–1300 E.D.Pa. Sept. 25, 1985 [Available on WESTLAW, DCT database]; *Butler v. HUD*, 595 F.Supp. 1041 (E.D.Pa. 1984); *In re Perez*, 64 B.R. 839 (Bankr.E.D. Pa.1986), *aff'd*, C.A. No. 86–6196 (E.D.Pa. June 22, 1987); and *In re Huderson*, Bankr. No. 84–01172K, Adv. No. 84–0582K, (Bankr. E.D.Pa. Sept. 5, 1985) [Available on WESTLAW FBKR–DCT database]. Hence, we shall apply this standard in the case under consideration.

It is axiomatic that "the scope of judicial review under this standard is narrow. A court may not substitute its judgment for that of an agency." *Horizons International, Inc. v. Baldridge*, 624 F.Supp. 1560, 1573 (E.D.Pa.1986). Additionally, since courts generally may not conduct a *de novo* review of the agency's decision, the focal point for judicial review should be the administrative record already in existence. *Id.* at 1573 (citing to *Camp v. Pitts*, 411 U.S. 138, 140–142, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973)). Thus, we turn to the administrative record in the case *sub judice* in order to address the issue before us.

■ We hold that, on the basis of the administrative record before us, HUD's refusal to accept the Debtors' mortgage into the assignment program—for the stated reason that the Husband-Debtor's loss of employment was not caused by circumstances beyond his control—was arbitrary and capricious. *See Harris v. HUD, supra*. (Record does not adequately support the finding that Harris' loss of her job was due to circumstances within her control and matter is remanded for HUD to accept assignment of Harris' mortgage). This was not a difficult decision for us to reach upon review of the extremely limited evidence—relevant to the issue—in the administrative record.

The *only* evidence contained in the administrative record regarding the cessation of the Husband-Debtor's employment record consists of two statements given by the Debtors in Form # 1 and Form # 2. *In toto*, the statements are as follows:

Form # 1 dated May 15, 1984:

I was terminated from Smith, Kline and French [Hahnemann Hospital] on November 21, 1983. I submitted a paper to International Conference of Geneticists to be held in India in December 1983, and it was accepted for presentation at the conference. Smith Kline refused permission for me to take leave of absence or vacation to present the paper. Presentation of papers at such a conference is both a mark of distinction and important to furthering my career. It was crucial that I attend. Further my mother was in poor health and I had few opportunities to see her since she lives in Pakistan. I have since December been invited to present two other papers, one in Turkey and one in Germany. I have been looking for work. As the attached resume shows I have an extensive work history and can be expected to retain employment within the next three years.

Form # 2 dated July 3, 1984:

I had the job when I bought the house. In 1983 I switched to another job which was better than the first. On my second job at Hahnemann Hospital I wrote a research paper in Medical Genetics and submitted it to the XV International Congress of Genetics. The Society accepted my paper. Since my mother is 75 years old and I have not seen her, I had deferred my visit to India until the XV International Congress of Genetics which was held in India. I asked my authority at my work to give me leave of absence for 4 weeks without pay; but he refused. While the paper was an honor for me, it was an honor for them too because their name is there on the paper. I wrote in my letter that I like the job, hate to resign, more so when I don't have a job when I come back. In fact I did not resign, but was terminated. Since I was terminated, I stayed little more with my

.folks in India where originally I came from. Therefore I don't have income since Nov. 21, 1983 but somehow I kept paying mortgage until February 1984. After that I was absolutely [sic] depleted in my savings. I will catch up by paying at least $50.00 per month more or request to extend my mortgage date. At present I am preparing for the exam organized by the American Society of Clinical Pathologists (ASCP in Blood Bank). If I pass it in August it will get me a good paying job real quick.

By the Husband-Debtor's own statements, he was terminated after he requested and was denied permission to take a leave of absence to present a paper at an International Conference in India. The Husband-Debtor does not state that he was terminated for failing to appear at work, nor does he state that he resigned, nor does he state that he was terminated for advising his employer that he would not appear for work because of his intention to deliver his paper at the Conference. The Husband-Debtor merely states that he was terminated on November 21, 1983, and that the conference was to be held in December, 1983. A notation in the administrative record states that the dates of travel were December 4, 1983, to February 1, 1984. Administrative Record at 123. Hence, it appears that the Husband-Debtor was terminated prior to his leaving for India.[4]

We believe that HUD's final determination was arbitrary and capricious in that the evidence in the administrative record does not support that the Debtor-Husband's loss of employment was due to his voluntary act of leaving his job to go to India. The administrative record amply demonstrates the Husband-Debtor's strong desire to go to the conference, but is devoid of any evidence that he was terminated because of any intent to attend the conference regardless of his employer's refusal to

grant permission. In fact, the statement in Form # 2 said only that the Debtor-Husband stayed longer in India, his place of birth, to visit family longer than he had originally intended since he had been terminated from his employment. It is conceivable that the Husband-Debtor's decision to actually go to India came about only *due to* his termination.

Furthermore, neither the administrative record nor the final decision makes any reference to the health or age of the Husband-Debtor's mother as an independent and possibly justifiable basis for his traveling to India and Pakistan in late 1983. Since we agree with the district court's statement in *Rickards v. HUD, supra,* 623 F.Supp. at 468, that HUD has a burden of demonstrating that it considered all of the relevant factors in denying a request for assignment, clearly HUD's failure to discuss this point is significant. And just as the court in *Rickards* observed, we likewise would note that, since the matter is being remanded, HUD should avail itself of the opportunity to resolve any questions that it did consider and rejected, including the fact that the health and age of the Husband-Debtor's mother, as relevant to the issue of whether his visit to her may have been justified as being a circumstance beyond his control.[5] This is so particularly in light of the fact that HUD's Handbook specifically includes illness of a family member living outside the household which has significantly reduced the amount of income available as an example of a qualifying reason for default. HUD Handbook 4330.1 "Administration of Insured Home Mortgages" (1977), as amended at Ch. 2 P 2–1(d), pp. 2–3 to 2–4. *See James v. HUD,* C.A. No. 4–81–457, slip op. (D.Minn. July 8, 1982) [Available on WESTLAW, DCT database].

Moreover, we are compelled to observe that there are no notations or comments in the administrative record itself which indi-

---

**4.** The Debtors have appended an affidavit executed by Mr. Zaidi to their cross-motion for summary judgment. Mr. Zaidi stated that he was terminated without explanation before he "was even scheduled to leave for the conference in India."

**5.** We briefly add that we strongly agree with the district court's statement in *Harris, supra,* at p. 2–3, that an applicant for the assignment program should not be rejected for having come face to face with Hobson's choice, and, having chosen to protect something important, encountered temporary financial adversity.

cate or reflect whether the Debtors supplemented the record orally, or, for that matter, HUD's evaluation of any such oral exchange of information. We find it disturbing that HUD would not be meticulous in its record keeping of its most important function of evaluating an application for assignment. In other words, if an applicant for assignment fails to supply information, the record must so reflect. HUD may not remain silent in its evaluation of all relevant information submitted by the applicant.

Our review of the administrative records leads us to conclude that HUD's decision that the Husband-Debtor's loss of employment was caused by a voluntary act is speculative, is not supported by the evidence, and is not a rational decision based upon the evidence in the record. Consequently, we find HUD's final decision to be arbitrary and capricious.

Therefore, we shall direct that this matter be remanded to HUD for further evidence or amplification of the record which must exist in order for HUD to render a final decision that the Husband-Debtor's loss of employment was not caused by circumstances beyond his control.[6] *See Weigant v. HUD,* Misc. No. 84–0839, (E.D.Pa. Jan. 10, 1985) [Available on WESTLAW, DCT database]. If HUD cannot establish evidence that the reason for the Husband-Debtor's termination was his voluntary act of leaving his job to go to India, it would seem appropriate for HUD to accept this mortgage into its assignment program.

---

**6.** In light of our holding, it is unnecessary for us to reach the question of whether HUD should have accepted the instant mortgage for assignment based upon the Debtors' second application.