**William MIASEL and Arlene Miasel, Plaintiffs,**

v.

**Samuel PIERCE, Jr., Secretary, United States Department of Housing and Urban Development (HUD); and Rothschild Financial Corporation, (Rothschild), Defendants.**

**Civ. No. 4–86–457.**

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 16, 1986.

Paul Onkka, Southern Minnesota Regional Legal Services, Carver, Minn., for plaintiffs.

Jerome G. Arnold, U.S. Atty., and Lynn A. Zentner, Asst. U.S. Atty., Minneapolis, Minn., for defendant HUD.

Peter J. McCall, Stapleton, Nolan & McCall, P.A., St. Paul, Minn., for defendant Rothschild.

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion for summary judgment. Defendants' motion will be granted.

**FACTS**

Plaintiffs William and Arlene Miasel are residents of 215 Park Place West, Norwood, Carver County, Minnesota. Defendant Samuel Pierce, Jr. is the Secretary of Housing and Urban Development (HUD) and is in charge of administering all of HUD's various programs. Defendant Rothschild Financial Corporation (Rothschild) is a mortgage banking firm in St. Paul, Minnesota which, inter alia, makes mortgage loans to individuals for the purchase of single family homes. Jurisdiction over this action is conferred by 28 U.S.C. §§ 1331, 1361, and 5 U.S.C. § 702.

The Miasels' residence at 215 Park Place West, Norwood, Carver County, Minnesota is subject to a loan secured by the March 9, 1984 mortgage with Rothschild. The mortgage is insured by the Federal Housing Authority (FHA) pursuant to section 203 of the National Housing Act. The original principal amount of the mortgage was $54,-702. At the time the mortgage was executed, plaintiff William Miasel was employed as a full-time cook, earning approximately $15,000 per year. Plaintiff Arlene Miasel was employed as a waitress, earning approximately $9,600 per year. In October, 1984 the plaintiffs decided to go into business for themselves and entered into a contract for deed to purchase a restaurant business in Cologne, Minnesota. This restaurant business began to fail in the summer of 1985, however, due in part to competition and in part to a general decline in the agricultural economy. Plaintiffs began falling behind in the mortgage payments on their residence. The restaurant closed in October, 1985.

In July, 1985 Rothschild notified plaintiffs that they were in default on the mortgage payments and that Rothschild would foreclose. However, since the mortgage was insured by FHA, Rothschild advised plaintiffs that they could ask HUD to take assignment of the mortgage, thereby substituting the United States as mortgagee and avoiding foreclosure. In October, 1985, plaintiffs contacted the Minneapolis/St. Paul HUD office and requested that HUD consider taking assignment of the defaulted mortgage. HUD began the consideration process by notifying Rothschild, asking for information and informing Rothschild that under HUD regulations it could not initiate foreclosure action until HUD completed its review and made a decision. HUD then gathered the necessary information from the parties, including plaintiffs' employment verification forms, income and expenses analysis, case history, assignment eligibility criteria information, and other financial information. In order to be eligible for the mortgage assignment program, plaintiffs needed to meet the following HUD criteria:

(1) the mortgagee (Rothschild) could, and had indicated its intention to, foreclose;

(2) three or more monthly installments were due but unpaid;

(3) the property must be the mortgagor's (plaintiffs) principal residence;

(4) the mortgagor must not own other property with an insured or HUD mortgage;

(5) the default must have been caused by circumstances beyond the mortgagor's control; and

(6) there must be a reasonable prospect of mortgagor's resuming full payments within three years and paying in full by the maturity date of the mortgage, extended up to 10 years if necessary.

*See* 24 C.F.R. § 203.650(a). HUD analyzed the information it had received, applied the six criteria for acceptance of assignment of plaintiffs' mortgage, and made a preliminary decision not to accept the assignment. On November 26, 1985 HUD notified the plaintiffs of its preliminary decision, stating that since default was caused by the failure of the plaintiffs' restaurant business, a risk plaintiffs undertook knowingly and voluntarily, the default was not caused by a circumstance or set of circumstances beyond the plaintiffs' control which temporarily rendered them financially unable to cure the delinquency within a reasonable time or make full mortgage payments. Additionally, there was not a reasonable prospect that plaintiffs would be able to resume full mortgage payments after a temporary period of reduced or suspended payments, not exceeding 36 months, or be able to pay the mortgage in full by its maturity date, even if extended by up to ten years. *See* 24 C.F.R. § 203.650(a)(6).

The HUD letter requested further current income information from plaintiffs and advised the plaintiffs of their right to schedule a meeting with HUD decision-making officials. Accordingly, on December 16, 1985 plaintiffs met with HUD loan servicer Ruth Drolsum. After this meeting Drolsum reviewed the entire file and decided that the request for assignment should be rejected. Her supervisors approved her decision. Plaintiffs were informed of HUD's final decision in a letter dated January 23, 1985. The final rejection was based on a determination that the default was not caused by circumstances beyond the plaintiffs' control and therefore the criteria for acceptance of a mortgage assignment had not been met. Plaintiffs contend that HUD abused its discretion in refusing to accept the assignment of plaintiffs' mortgage.

## DISCUSSION

Federal Rule of Civil Procedure 12(c) provides that if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56. Because matters extraneous to the pleadings, specifically, affidavits and exhibits, have been presented to and not excluded by the Court, defendants' motion is considered a motion for summary judgment pursuant to Rule 56.

A defendant is not entitled to summary judgment unless the defendant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *E.g., Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.,* 741 F.2d 1142, 1144–45 (8th Cir.1984). The nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Salinas v. School District of Kansas City,* 751 F.2d 288, 289 (8th Cir.1984).

The Court's review of HUD's determination of plaintiffs' eligibility for participation in the mortgage assignment program is governed by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* The APA states:

[T]he reviewing court shall ... interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action ... [and] shall:

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

5 U.S.C. § 706(2)(A). The applicable test for abuse of discretion is whether the agency action was based upon consideration of relevant factors, whether there was a clear error of judgment, and whether a rational basis existed for the agency conclusions. *Mobil Oil Corp. v. D.O.E.*, 610 F.2d 796, 801 (Temp.Emer.Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Absent clear error or lack of rational basis, the Court should not substitute its judgment for that of the agency, even if it would have decided differently. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The mortgage assignment program at issue was enacted in 1959 as section 114 of P.L. 86–372, Section 230 of the National Housing Act of 1934, as amended (12 U.S.C. § 1715u), subject to such regulations as the Secretary of HUD may prescribe:

> [The] obligations of a mortgagee shall apply with respect to the Secretary when the Secretary has acquired an insured mortgage under this section [1715u], in accordance with and subject to regulations ... which shall be prescribed by the Secretary.

12 U.S.C. § 1715u(b)(1). The legislative history of section 230 of the National Housing Act shows that Congress intended implementation of the mortgage acquisition program to be at the discretion of the Secretary of HUD:

> By retaining [section 114 and adding section 230 to the National Housing Act] in S.2654, it is the intent of the committee that they are discretionary with the [Secretary of Housing and Urban Development] and are to be used only in hardship cases involving deserving mortgagors.

Sen.Rep. No. 924, 86st Cong. 1st Sess. at 2 U.S.Code Cong. & Admin.News 1959, pp. 2844, 2853 (1959). This language of the Senate report also indicates that assignment of defaulted FHA insured mortgages was meant to be an extraordinary form of relief, to be used only in true cases of hardship. In accordance with 12 U.S.C. § 1715, the Secretary of HUD enacted regulations 24 C.F.R. §§ 203.650 through 203.-660. These regulations provide that HUD will only accept assignments of FHA-insured mortgages if they meet the six specific criteria set out at 24 C.F.R. § 203.-650(a)(1)–(6). The criteria at issue in the case at bar states:

> The mortgagor's default [must be] caused by circumstances beyond the mortgagor's control. . . .

24 C.F.R. § 203.650(a)(5).

HUD determined that plaintiffs decided to purchase and operate a restaurant in Cologne, Minnesota shortly after securing the FHA-insured loan on their home, and that by making this decision plaintiffs put at risk their ability to meet their mortgage obligations. Thus HUD determined that the plaintiffs' default was caused by circumstances within their control. Plaintiffs argue that HUD in fact used a per se rule that a mortgagor whose default is caused by the failure of a self-owned business is not qualified for an assignment regardless of the circumstances causing the failure. Plaintiffs do not offer any evidence to support their claim that HUD uses any per se rule in cases like the one at bar. If HUD was using a per se rule, it is hard to understand why it bothered to gather so much information about financial status, case history, and assignment eligibility. If HUD applied a per se rule, it would not have needed to go to the trouble of amassing such a complete file in the plaintiffs' case.

Plaintiffs further argue that HUD made an inadequate factual review of the information it gathered. Plaintiffs argue that HUD should have inquired as to whether plaintiffs knew that new competition was likely to face their restaurant business or that the economy was going to take a down turn. Plaintiffs contend that had HUD made this inquiry and "fully evaluated" the causal connection between the plaintiffs'

default and the failure of their business, it would have concluded that the failure of the business was caused by circumstances beyond plaintiffs' control. This argument is not persuasive. Plaintiffs voluntarily chose to open a new business and took the risks of competition and economic downturns inherent in that decision. The risk that a new business will fail is a risk that all entrepeneurs take. It was within plaintiffs' control to undertake that risk or not. Thus the subsequent mortgage delinquency resulting from the failure of plaintiffs' business was caused by circumstances within the plaintiffs' control.

■ Plaintiffs also argue that HUD's statement of the reasons for its assignment denial was incomplete, unclear, and inadequate, and therefore the case should be remanded to HUD. HUD's statement of the reason for its denial in plaintiffs' case stated that:

> The default was not caused by a circumstance or set of circumstances beyond your control which temporarily rendered you financially unable to cure the delinquency within a reasonable time or make full mortgage payments.

> You have indicated the September 1, 1985 mortgage default was caused by the failure of your restaurant business. Your decision to start a new business with its known risks and fluctuations in income is not determined to be a temporary circumstance beyond your control.

Defendants' Exh. 3, Jan. 23, 1986 Final Decision Letter. This final statement, especially in light of the previous preliminary decision letter and the meeting with HUD official Drolsum, is neither incomplete, unclear, or inadequate.

■ Plaintiffs have failed to raise a genuine issue of material fact in support of their contention that HUD abused its discretion in denying the request for assignment of plaintiff's defaulted mortgage to HUD. Therefore, defendants' motion for summary judgment will be granted.

Based on the foregoing, and upon all the files, records, and proceedings in this matter,

IT IS ORDERED that defendants' motion for summary judgment is granted.