**Barry J. CRONKHITE, Plaintiff,**

v.

**Jack KEMP, Secretary of the U.S. Department of Housing and Urban Development, Keith Green, Manager of Spokane Field Office of U.S. Department of Housing and Urban Development, Lomas Mortgage USA, Inc.; DCBL, Inc., successor trustee; Leslie Doughman, agent of DCBL, Inc.; Federal National Mortgage Association, beneficiary, Defendants.**

No. C–89–765–JLQ.

United States District Court,
E.D. Washington.

July 2, 1990.

Norman R. McNulty, Spokane Legal Services Center, Spokane, Wash., for plaintiff.

James R. Shively, Asst. U.S. Atty., Spokane, Wash., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, Chief Judge.

The above appeal of an administrative decision denying plaintiff's request for acceptance into HUD's Assignment Program is before the court on cross-motions for summary judgment (Ct.Rec. 22 and 26). A hearing on said matter was held on June 25, 1990. Norman R. McNulty, Jr. appeared on behalf of plaintiff; Assistant United States Attorney James Shively appeared on behalf of defendant. Having reviewed the record, heard from counsel, and being fully advised in the premises, this Order is intended to memorialize the court's oral ruling in the hearing on this matter.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed.R. Civ.P. 56(c), *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Neither party contests the facts relied upon by the opposing party, therefore summary judgment is appropriate.

Plaintiff is a mortgagor under § 203 of the National Housing Act, a/k/a the "203 Program." The subject property is encumbered by a Deed of Trust wherein Federal National Mortgage Association (FNMA) is the Beneficiary. Lomas Mortgage USA, Inc. administers the Deed of Trust for FNMA. The Deed of Trust is HUD insured under the 203 Program. Plaintiff is in default on the loan, not having made a full payment since March, 1989.[1] This court previously granted preliminary injunctive relief, staying the foreclosure sale of the property until HUD addressed the merits of plaintiff's request for acceptance into the Assignment Program, and this court ruled on the merits of any appeal.

On March 13, 1990 HUD issued a final decision denying plaintiff's request for acceptance into the Assignment Program. The bases for HUD's rejection are twofold: (1) that there is no medical evidence that plaintiff is unable to work, therefore there are no circumstances beyond his control which prevented him from making house payments; and (2) there is no reasonable likelihood that plaintiff will obtain employment in the future, therefore there is no reasonable likelihood that he will be able to resume full payments within 36 months. Plaintiff contends that HUD used an incorrect legal standard, and that its two findings are mutually exclusive, therefore HUD abused its discretion.

Scope of Review

Section 706 of the Administrative Procedure Act (APA), "Scope of Review," states that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and de-

---

**1.** In accordance with this court's order at the time it granted a stay of foreclosure sale, plaintiff has paid $75 per month into the registry of the court.

termine the meaning or applicability of the terms of an agency action, to the extent necessary to the decision." 5 U.S.C. § 706. The spectrum of appellate review ranges from review of only the administrative record, through review of the administrative record supplemented by various degrees of additional evidence, to *de novo* review.

*De novo* review is authorized only when the action is adjudicatory and agency fact-finding procedures are inadequate, or where issues not before the agency are raised in a proceeding to enforce nonadjudicatory agency action. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The parties have not contended that *de novo* review is appropriate in the proceedings before this court.

The general rule is that judicial review of agency action is limited to a review of the administrative record, *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir.1986), although a number of exceptions are recognized. These exceptions have arisen in light of the Supreme Court's decision that, although the administrative agency's decision is entitled to a presumption of validity, the reviewing court must nevertheless engage in a "substantial inquiry," i.e., "a thorough, probing, in-depth review." *Overton Park, supra* 401 U.S. at 415, 91 S.Ct. at 823.

The Ninth Circuit recognizes four exceptions which have evolved to permit the appellate court to go beyond the administrative record.[2] In the instant case this court finds that none of the exceptions apply. Accordingly, this court's review will be limited to the record before the agency at the time it rendered its final decision.

Standard for Review

The Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (APA), provides that final agency action shall be held unlawful and shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it was taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), the Supreme Court instructed courts to consider whether an agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." The court's inquiry should be "searching and careful," although the reviewing court is not empowered to substitute its judgment for that of the agency. The agency "must articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made'." *Sierra Pacific Industries v. Lyng*, 866 F.2d 1099, 1105 (9th Cir.1989). Additionally, this court must review the Secretary's decision within the context of the policy of the National Housing Act (NHA), to-wit, "the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441(a); 12 U.S.C. § 1701t. A failure to consider and implement alternatives which would enable HUD to follow and implement the policies of the NHA constitutes an abuse of discretion. *Russell v. Landrieu*, 621 F.2d 1037, 1041–42 (9th Cir.1980).

**2.** One exception was enunciated by the Ninth Circuit in *Bunker Hill Co. v. Environmental Prot. Agency*, 572 F.2d 1286 (9th Cir.1977), for cases involving complex technical testimony. The court permitted supplementation of the administrative record by materials which, though going to the merits, merely explained the original record. *Id.* at 1292. A second exception is when agency bad faith is claimed. *Public Power Council v. Johnson*, 674 F.2d 791, 795 (9th Cir. 1982). The third exception is when additional evidence is necessary to *explain* the agency's action. *Friends of The Earth v. Hintz*, 800 F.2d at 829. But it is only when "there is such a failure to explain administrative action as to frustrate effective judicial review" that the court may seek from the agency such additional explanations of its reasons for its decision as the reviewing court deems necessary. *Id.* The fourth and final exception arises when it becomes obvious that the agency, in rendering its decision, relied on documents or materials which are not included in the record. *Public Power Council v. Johnson*, 674 F.2d 791 (9th Cir.1982).

12 U.S.C. § 1715u provides that when a residence insured under 17 U.S.C. § 1701 et seq. is in default, the Secretary may make all or part of the monthly payments directly to the lender on the mortgagor/borrower's behalf in order to avoid foreclosure, if the default was caused by circumstances beyond the borrower's control, such circumstances rendered the borrower temporarily unable to correct the delinquency, and the Secretary finds that there is a reasonable prospect that the borrower will be able to resume full payments within a maximum of 36 months. 12 U.S.C. § 1715u(a). However, if the Secretary determines that the assistance provisions of subsection (a) are inappropriate, the Secretary shall, if necessary to avoid foreclosure, acquire the mortgage and its security, and may then provide assistance to the mortgagor by foregoing interest or principal or both for not more than 36 months. 12 U.S.C. § 1715u(b). Subsection (b), known as the Assignment Program, likewise requires that the Secretary find a reasonable prospect that the mortgagor will be able to resume full payments. In addition, HUD regulations, contained at 24 C.F.R. § 203.640(a), set forth six criteria for eligibility, only two of which are relevant here, *i.e.*, that the default was caused by circumstances beyond the mortgagor's control, and there is a reasonable prospect that the mortgagor will be able to resume payment after the period of reduced or suspended payments. The mortgagor has the burden of proving satisfaction of the conditions for qualifying for the assignment program. 24 C.F.R. § 203.650(a); *Western & Southern Life Ins. Co. v. Smith*, 859 F.2d 407, 411 (6th Cir.1988) (citations omitted).

On March 13, 1990 HUD, following a face-to-face meeting with plaintiff, reaffirmed its preliminary decision rejecting plaintiff's request for acceptance into the assignment program. It set forth the following explanation for rejection:

> You claim to have worked mostly as a mover and that you have been unable to perform this work due to medical problems. You have indicated basically that you have a lot of pain resulting from your medical problems which prevents you from doing heavy lifting. The records indicate that the medical problems started before you assumed the mortgage in question and have been ongoing to the present. We have seen no medical evidence that indicates that you cannot work. Even if your medical problems prevent you from working as a mover, you could obtain other work. You have proven no circumstance that would have prevented you from obtaining income. Therefore, your medical problems do not rise to a level sufficient to create circumstances beyond your control so as to justify assigning your mortgage.

> Additionally, you have provided no information that convinces us that your inability to make payments is temporary. Information provided from your doctors indicates that no organic reason has been found to explain the pain you suffer. Since, according to your doctor's report, there is evidently no medical procedure available to eliminate your problem, we cannot assume that you would be able to resume employment as a mover in the future. Furthermore, we have no reason to believe you will obtain other work. Although you have been unemployed for the most part since 1986, you made no attempt to obtain training or other work until November 1989, after the loan defaulted, when you contacted the vocational rehabilitation department. In fact, you appear to be reluctant to accept other work in that you indicated that you had no plans for obtaining employment and you specifically stated that you would not take "dummy work or be a waiter."

> As previously stated in our January 29, 1990, denial letter, our records indicated that since January 1986, 30 out of 49 payments have been late, 3 non-sufficient fund checks have been reversed from your account, and 11 payments have not been made. The records show that you have been having trouble making your mortgage payments since January of 1986, four months after you assumed the

mortgage. In fact, you previously requested assignment of your mortgage on April 24, 1987, and were told that you were ineligible.

You have presented no evidence to indicate a likelihood that your financial situation will change to enable you to resume payments within the required time period. The fact that you finally contacted the vocation rehabilitation department is not sufficient to establish that your financial status is likely to change in time to justify accepting assignment of your mortgage, since there is no evidence showing that you are a good candidate for retraining and that there is a good possibility of your finding other work. Ct.Rec. 24, at 5–6.

For the reasons set forth below, this court finds that the Secretary based his decision upon legally erroneous grounds, and therefore abused his discretion.

### A. Circumstances Beyond Plaintiff's Control

■ It is undisputed that plaintiff quit his job. The Secretary found that he voluntarily quit his job, and that the justification propounded by him for being unable to work, i.e., pain, is not supported by the medical record, therefore the default was not caused by circumstances beyond his control. HUD's Handbook [3] No. 4330.2, ch. 2, § 2–1d, states:

Examples of qualifying reasons for default include, but are not limited to:

(1) Curtailment of family income, such as *unemployment* or underemployment; loss, reduction or delay in receipt of federal, State, municipal benefits (*e.g.,* Social Security, Supplemental Security Income, Public Assistance, governmental pensions) or of private benefit payments (*e.g.,* pensions, annuities, retirement plans); loss of support payments; or other *loss of income due to* divorce, *illness* or death. (Emphasis added).

### 1. *Unemployment*

The Secretary did not clearly distinguish plaintiff's unemployment from his "illness" in determining that the default was not beyond his control. It is uncontested that plaintiff has not worked since August 8, 1986.[4] His prior work experience was primarily as a furniture mover from 1974 to 1986. It is not disputed that he injured his back in 1986 while moving a piano upstairs. He alleges that he has suffered back pain, nausea and weakness since that time, as well as pain in the area where his left testicle was removed due to cancer.

This court has found only two cases dealing with a similar issue. In *James v. Department of Housing & Urban Development,* No. 4–81–457, slip op., 1982 WL 1760 (D.Minn. July 8, 1982), the court reversed the Secretary's rejection of an application by a woman who quit her job in order to care for her grandchildren. The District Court for the Western District of Washington cited *James* favorably in *Brown v. Kemp,* 714 F.Supp. 445 (W.D.Wash.1989), stating: "the presence of one supposed element of choice does not necessarily exclude a mortgagor from the assignment program." *Id.* at 447. In *Western & Southern Life Ins. Co. v. Smith,* 859 F.2d 407 (6th Cir.1988) the court found no abuse of discretion where the mortgagor voluntarily left his job, allegedly due to health reasons, including "difficult mental problems stemming from his childhood," but where he received no professional medical assistance for any physical or mental problems.

In the instant case, had plaintiff merely quit his job because he didn't like it, it would be an easier question whether his unemployment was beyond his control. However, it is not disputed that he quit it because of a back injury. He alleges that he has not returned to work because of pain. Thus, his "choice" was *influenced by* his "illness." If that illness is not an acceptable justification for the default, then

---

**3.** HUD's guidelines, contained in HUD Handbook No. 4330.2, entitled Administration of the Home Mortgage Assignment Program, are mandatory on HUD. *Ferrell v. Pierce,* 560 F.Supp.

1344 (N.D.Ill.1983), *aff'd* 743 F.2d 454 (7th Cir. 1984).

**4.** Plaintiff made house payments between 1986 and March 1989 by selling personal possessions.

his unemployment would be based upon nothing more than choice and would therefore be truly voluntary.

## 2. *Illness*

The primary issue in contention is whether subjective pain, without an objective medical basis for such pain, is a circumstance "beyond his control." The Secretary's position was that an emotional disorder, which manifests itself in phantom pain, is not an illness beyond plaintiff's control. This court found only one case which addresses emotional or mental illness in this context.[5] In *Western & Southern Life Ins. Co. v. Smith*, 859 F.2d 407, 408 (6th Cir.1988) the court impliedly recognized that a mental illness could constitute an illness beyond the mortgagor's control, but it found no basis to reverse the Secretary where the mortgagor had not sought professional assistance for his alleged physical and mental problems.

There is no evidence that plaintiff has sought medical treatment for an emotional/mental illness, although there is substantial evidence of his having sought medical assistance for physical problems. However, the evidence indicates that plaintiff's physicians only recently ruled out a specific organic source for his pain, thereafter focusing on the concept of phantom pain. Although plaintiff has a history of cancer problems,[6] and although the pain he

complains of is in the general area of his prior surgeries, it does not appear that he has any recurrence of cancer. Initially it was believed that he might be suffering from a "mild weakness in the posterior wall," *i.e.*, a hernia. However, the current diagnosis of Dr. Fincher, one of his personal physicians, is that the source of his pain "does not appear to have a truly identifiable organic basis," and the pain which he experiences, while real to him, "may represent a phantom groin or inguinal pain." Nor were his physicians able to determine how much he is incapacitated by the pain. The Washington State Department of Social and Health Services awards for disability benefits initially characterized his primary disorder as "musculo skeletal disorder," however the last award in the record listed the primary disorder as "emotional disorder."

This court finds that plaintiff's acceptance by DSHS for disability benefits is persuasive, although not conclusive, proof that he suffers from a disabling illness which has prevented him from working. This court also finds that the Secretary abused his discretion in ruling out what is probably emotionally based pain as a qualifying illness. Under the Secretary's interpretation, any illness lacking a specific organic basis, which would include most emotional illnesses as well as undiagnosed physical illnesses, would not qualify. Such

---

5. The following is a summary of cases addressing the control element: *Miasel v. Pierce*, 650 F.Supp. 21 (D.Minn.1986) (where mortgagor voluntarily chose to open new business, with its inherent risks of competition and economic downturns, it was within plaintiff's control whether to take that risk, therefore the subsequent failure of the business causing default on the home mortgage does not constitute circumstances beyond the borrower's control); *Grasty v. U.S. Dept. of Housing & Urban Development*, 636 F.Supp. 912 (E.D.Pa.1985) (default not caused by circumstances beyond plaintiff's control where plaintiff was unable to collect unemployment benefits which would have enabled him to make his mortgage payments, because he was out of the country moving possessions stored with friends who had been forced to give up their home; and such circumstances do not constitute the type of inevitable temporary crisis contemplated by Congress); *Federal Nat. Mtg. Ass'n v. Rathgens*, 595 F.Supp. 552 (S.D.Ohio 1984) (rejecting Secretary's contention that de-

fault was caused by debtor's debt ratio, rather than loss of income due to injuries inflicted by husband. Court considered the circumstances as a whole to determine the ultimate cause of the default. It found that it was the mortgagor's "tortuous four-month marriage that caused the divorce, caused the injuries, caused the over-extension of credit, and caused the default." Accordingly, the court held that the husband's extravagance and beatings were circumstances beyond her control); and *Brown v. Kemp*, 714 F.Supp. 445 (W.D.Wash.1989) (Secretary erred in holding that plaintiff's decision to be self-employed resulted in all decisions affecting her business' operation being within her control, therefore reduction of income due to business setbacks constituted circumstances beyond her control).

6. In 1981 plaintiff underwent surgery to remove a testicular tumor. He had additional surgery in the same area in 1983.

a narrow interpretation of the statute resulted in the Secretary's failure to effectuate the policy goals which Congress intended to promote.[7] Accordingly, this court finds that plaintiff's unemployment was caused by circumstances beyond his control. His original loss of employment was occasioned by a work-related injury to his back. His continued unemployment was caused by pain, albeit such pain may be emotional or psychological in origin, rather than organic.

## B. Likelihood of making future payments

■ 24 C.F.R. § 203.650(a)(6) provides that there must be a "reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years." HUD's Handbook 4330.2, ch. 2, § 2–1e provides:

> Future ability to pay—not present income or credit history—is the key factor in evaluating this criterion. No applicant for assignment shall be determined ineligible simply upon lack or type of income at the time the assignment request is processed. All present and prospective sources of income ... must be considered when determining reasonable prospect for repayment.
>
> . . . .
>
> Where a person is presently out of work and is not suffering from any disability that will prevent reemployment, and is seeking work, all doubts as to future employability should be resolved in his/her favor.

*Id.* at 2–5–2–7.

Plaintiff contends that the Secretary ignored his efforts to obtain employment with the assistance of the Division of Vocational Rehabilitation. However, the administrative record does not support this contention. Rather, the Secretary, after noting in two places the fact that plaintiff had contacted DVR, concluded that, given the fact that over three years had elapsed since plaintiff quit working, "sufficient time ha[d] elapsed for [him] to have found a different type of employment, get additional schooling or retraining."

This court finds that the Secretary abused his discretion with regard to this element. The Handbook provides that, absent a disability,[8] and given a person seeking work,[9] "all doubts as to future employability should be resolved in his/her favor." *Id.* at 2–7; *Grasty v. U.S. Dept. of Housing & Urban Development*, 636 F.Supp. 912 (E.D.Pa.1985). Under the Secretary's

7. When Congress enacted the National Housing Act (NHA), it intended to provide a decent home and suitable living environment for every American family. 12 U.S.C. § 1701t; *Brown v. Kemp*, 714 F.Supp. 445, 448 (W.D.Wash.1989). The assignment and insurance programs were both developed to further that goal. *Id.* When Congress enacted the Foreclosure Avoidance Program, its intent in imposing the condition that the default be caused by circumstances beyond the mortgagor's control was to direct the Secretary's attention to "deserving homeowners in hardship cases." *Id.; Federal Nat. Mtg. Ass'n. v. Rathgens*, 595 F.Supp. 552, 555 (S.D.Ohio 1984) (quoting S.Rep. No. 924, 86th Cong., 1st Sess. *Reprinted in* 1959 U.S.Code Cong. & Ad.News 2844, 2853). "This language of the Senate report also indicates that assignment of defaulted FHA insured mortgages was meant to be an extraordinary form of relief, to be used only in true cases of hardship." *Miasel v. Pierce*, 650 F.Supp. 21, 24 (D.Minn.1986).

8. The court was unable to find any cases which define disability, or which distinguish between partial and total disability. Plaintiff does not contend that he is totally disabled, only that he is partially disabled. In light of the language requiring only that the disability not prevent reemployment, in general, rather than reemployment in the same line of work, plaintiff's partial disability is not sufficient, *per se*, to support a conclusion that he is not reasonably likely to obtain employment.

9. Plaintiff asks that the court take notice that he has now been accepted by DVR for counseling and assistance in rehabilitation. Although such evidence goes beyond the administrative record and cannot therefore be used to support reversal of the Secretary's decision that he was not reasonably likely to be able to work or make mortgage payments in the future, his final acceptance by DVR is not necessary to satisfy the "seeking work" criteria. At the time of the Secretary's decision the record reflects that he had initiated preliminary proceedings for acceptance into the rehabilitation program.

evaluation of circumstances beyond plaintiff's control, the Secretary implicitly concludes that plaintiff is not disabled by illness because he cannot prove an objective basis for his pain. If he is not disabled to the extent that he is thereby prevented from reemployment, and at the time of the final decision he was seeking acceptance by DVR for assistance in job placement and/or retraining, the Secretary is required to resolve all doubts about his future employability in his favor. It has not done so. It appears that the Secretary was requiring not only a reasonable likelihood of employment, but that plaintiff be a "good candidate for retraining," with a "good possibility" of finding other work. This is a more restrictive standard than that required by the regulations. *See In re Armstead,* 97 B.R. 798, 806 (Bankr.E.D.Pa.1989) (regulations require only that the mortgagor "clear the apparently low threshold of showing no more than a 'reasonable prospect' of resuming her mortgage payments," not that she establish an "almost certain prospect" of doing so).

According to Dr. William Riley, a clinical psychologist, plaintiff is of below average intelligence, functioning at the twentieth percentile of the general population, reads orally at the beginning ninth grade level, spells at the fourth grade level, has fifth grade arithmetic skills, has a developmental learning disorder, and "hysteroid personality features that may detract from his ability to view the world or himself in a more objective manner." In addition, the Secretary noted that plaintiff is not willing to do "dummy work or be a waiter." However, the regulations and handbook do not require that an applicant be seeking any type of work at all, without regard to training, inclination or ability. Rather, the implicit standard is a reasonableness standard.

**10.** The administrative record indicates that plaintiff assumed the loan in 1985, and that he commenced having trouble making his payments within four months. Since January, 1986, 30 out of 49 payments were made late, 3 were made with non-sufficient fund checks, and

Although plaintiff contends that the Secretary abused his discretion by considering his past poor credit history,[10] the Handbook does not say that the Secretary may not consider past credit history, it merely says that the *key* factor is future ability to pay. In *Federal Nat. Mtg. Ass'n v. Rathgens,* 595 F.Supp. 552 (S.D.Ohio 1984) the court held that HUD must consider past spending patterns, past history of payment on mortgage, and potential increase in income in evaluating the reasonable likelihood of repayment. In the instant case the Secretary did consider plaintiff's past difficulties in making timely mortgage payments. However, the Secretary did not consider plaintiff's tenacity in attempting to keep current. In *Brown v. Kemp,* 714 F.Supp. 445 (W.D.Wash.1989) the court recognized a self-employed mortgagor's tenacity in overcoming the difficulties of polio, single parenthood and building a business over thirteen years. It held that the Secretary should have resolved all doubts as to her future ability to pay in her favor. Finally, the Handbook expressly states that:

> The mortgagor's past spending patterns should be reviewed carefully. If the mortgagor has demonstrated the ability to make regular mortgage payments, even when those payments represented a large percentage of his or her income, the mortgagor should be given the benefit of the doubt when evaluating ability to resume full payments and pay in full by the maturity date.

Handbook No. 4330.2, Ch. 2 at 2–6.

In the instant case plaintiff has struggled almost from the inception of his indebtedness to keep current on his payments. Although a large number of his payments were late, they were made. He has been out of work since August, 1986, but only ceased making payments in March, 1989, having sold personal possessions to make the intervening payments.[11]

11 payments had been missed as of January 29, 1990.

**11.** Although plaintiff has made the $75 per month payments into the court's registry since the court enjoined foreclosure, these payments occurred after the agency decision and there-

Finally, plaintiff contends that the Secretary abused its discretion by applying an improper standard, i.e., that he prove "unusual hardship circumstances" as a condition of eligibility, and that he was not advised that such a standard would be applied until he received the Secretary's brief on appeal. This argument is without merit. This standard is set forth in the legislative history of the Act, as well as case law. *See* S.Rep. No. 924, 86th Cong., 1st Sess. *Reprinted in* 1959 U.S.Code Cong. & Ad. News 2844, 2853 (assignment is to be used "only in hardship cases involving deserving mortgagors"); *Brown v. Kemp*, 714 F.Supp. 445, 448 (W.D.Wash.1989) (Congress' intent in imposing the condition that the default be caused by circumstances beyond the mortgagor's control was to direct the Secretary's attention to "deserving homeowners in hardship cases"); *Federal Nat. Mtg. Ass'n. v. Rathgens*, 595 F.Supp. 552, 555 (S.D.Ohio 1984) (Congress directed the Secretary's attention to "deserving homeowners in hardship cases"); *Miasel v. Pierce*, 650 F.Supp. 21, 24 (D.Minn.1986) (assignment is meant to be an extraordinary form of relief, to be used only in true cases of hardship). Although the legislative history does not expressly link "hardship" with "unusual", such an interpretation is implicit in the conditions for eligibility, particularly the requirement that the default be caused by circumstances beyond the mortgagor's control. In any event, even if this standard were erroneous, the Secretary's decision did not use such language, and the mere fact that the brief on appeal did so is not a basis for reversal.

In conclusion, this court finds that the Secretary abused his discretion by basing the denial of plaintiff's petition for acceptance into the Assignment Program on legally erroneous grounds. This court finds that the default was caused by circumstances beyond plaintiff's control, and there was, at the time of the Secretary's decision, a reasonable prospect that plaintiff would be able to resume payment after a period of reduced or suspended payments. However, this court also finds it

appropriate to permit the Secretary to re-evaluate the second element, the reasonable likelihood of resuming full payments, at six month intervals during the next three years.

IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Summary Judgment (Ct.Rec. 22) IS HEREBY GRANTED IN PART AND DENIED IN PART. Plaintiff's motion is GRANTED to the extent that the Secretary is prohibited from proceeding with foreclosure against the subject property, pending further submittal by plaintiff of a rehabilitation plan. Plaintiff shall continue to make the $75.00 per month payments into the registry of the court, which money will be deposited into an interest bearing account. Plaintiff is to keep the Secretary informed as to his progress in his rehabilitation plan and his efforts for re-employment. These materials shall be furnished to the Secretary at least every six months, at each stage in the rehabilitation program. Every six months the Secretary may review the issue whether plaintiff is reasonably likely to be able to resume payments. The Secretary may not review the issue whether plaintiff's default was caused by circumstances beyond his control, the court's decision on that issue constituting the law of the case. The 36 month period of deferred payments shall commence with entry of this order.

2. Defendant's Motion for Summary Judgment (Ct.Rec. 26) IS HEREBY DENIED.

3. Foreclosure of the subject property IS HEREBY STAYED until further order of this court.

4. The Clerk is HEREBY DIRECTED to close the file, subject to re-opening for cause shown.

IT IS SO ORDERED.

---

fore cannot be utilized as evidence supporting his tenacity in trying to keep current on his

mortgage payments.