48 F.3d 1026
 Diana A. POZZIE, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
and Henry G. Cisneros, in his official capacity as
Secretary of the Department of Housing
and Urban Development,
Defendants-Appellees.
 No. 94-1932.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 16, 1994.
Decided Feb. 24, 1995.
 
 Mary D. Cahill (argued), Susan Einspar-Wayne, Hinsdale, IL, James P. Brown, Will County Legal Assistance Program, Jolet, IL, for Diana A. Pozzie.
 Kurt Lindland, Office of the U.S. Atty., Crim. Div., Chicago, IL, Steven C. Mason (argued), Office of the U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, Nelson Diaz, U.S. Dept. of Housing and Urban Development, Office of Gen. Counsel, Washington, DC, for U.S. Dept. of Housing and Urban Development.
 Kurt Lindland, Office of the U.S. Atty., Crim. Div., Chicago, IL, Nelson Diaz, U.S. Dept. of Housing and Urban Development, Office of the Gen. Counsel, Washington, DC, for Henry G. Cisneros.
 Before POSNER, Chief Judge, EASTERBROOK and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 After Diana Pozzie lost her job and defaulted on a home mortgage insured by the Department of Housing and Urban Development ("HUD"), she applied to have HUD accept an assignment of her mortgage and thereby prevent foreclosure. HUD rejected her application, finding that Pozzie failed to satisfy the eligibility requirement that the default not be caused by circumstances beyond her control. HUD found that Pozzie's job loss resulted from her excessive tardiness and unauthorized overtime work. Pozzie sought judicial review, and the district court granted summary judgment in favor of HUD. The issue before us is whether HUD's decision to deny Pozzie's assignment request was arbitrary, capricious, or an abuse of discretion. We affirm.
 
 I. Background
 
 2
 In 1987, Diana Pozzie purchased a home in Lockport, Illinois, with a mortgage that was insured by HUD under the National Housing Act ("NHA"), 12 U.S.C. Secs. 1701 et seq. In April 1991, she was discharged from her secretarial position at Gottlieb Memorial Hospital, where she had worked for nearly fifteen years. Pozzie was fired for excessive tardiness and for working unauthorized overtime; her employer had warned her on numerous occasions about these problems. Pozzie's job loss prevented her from making mortgage payments for June, July, and August 1991, and she defaulted on her mortgage. In September 1991, Pozzie requested HUD to take assignment of the mortgage under the agency's mortgage assignment program.
 
 
 3
 The mortgage assignment program provides relief from foreclosure to low income homeowners who, because of a temporary financial crisis, default on mortgages insured by HUD under the NHA. See 12 U.S.C. Sec. 1701t; 12 U.S.C. Sec. 1715u. Under the program, HUD will accept assignments of such mortgages when the following six conditions are met:
 
 
 4
 (1) the mortgagee has informed the mortgagor that it intends to foreclose the mortgage;
 
 
 5
 (2) three or more full monthly installments due on the mortgage are unpaid;
 
 
 6
 (3) the property is the mortgagor's principal residence;
 
 
 7
 (4) the mortgagor does not own other property subject to a mortgage insured or held by HUD;
 
 
 8
 (5) the mortgagor's default was caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments;
 
 
 9
 (6) there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within three years and will be able to pay the mortgage in full by the maturity date of the mortgage, extended up to ten years if necessary.
 
 
 10
 24 C.F.R. Sec. 203.650(a). The mortgagor bears the burden of proving that he or she meets the conditions to qualify for the assignment program. See Western & Southern Life Ins. Co. v. Smith, 859 F.2d 407, 411 (6th Cir.1988).
 
 
 11
 Congress has set lofty goals for achieving home ownership for low income families. The "national goal" includes "a decent home and a suitable living environment for every American family." 12 U.S.C. Sec. 1701t. "[T]he highest priority and emphasis should be given to meeting the housing needs of those families for which the national goal has not become a reality." Id. But this purpose cannot be translated into a system that intervenes in most foreclosures of federally insured mortgages. Taken to its extreme, HUD would have to provide assistance to every insured mortgagor who applies for relief. This is clearly not what Congress intended. The real purpose of the program is to "provide relief to qualified applicants." Ferrell v. Pierce, 785 F.2d 1372, 1379-80 n. 6 (7th Cir.1986); see also Miasel v. Pierce, 650 F.Supp. 21, 24 (D.Minn.1986) (assignment of these defaulted federally insured mortgages was intended to be an "extraordinary form of relief, to be used only in true cases of hardship").
 
 
 12
 After reviewing information it had received from Pozzie and the lender, HUD issued a preliminary decision in November 1992 not to accept the assignment. HUD found that conditions five and six were not met. See 24 C.F.R. Sec. 203.650(a)(5) & (6). Pozzie subsequently submitted additional information relevant to her assignment eligibility and then, along with her attorney, met with HUD loan officer Yvonne Whaley. In December 1992, HUD issued a final decision rejecting Pozzie's mortgage assignment application. HUD explained its decision:
 
 
 13
 You stated the reason for defaulting on your mortgage payments was the loss of employment. The documentation provided indicates that you were discharged for excessive tardiness and for working unauthorized overtime even though you had been warned about these problems on numerous occasions. You were also denied unemployment benefits because of this. It is therefore the decision of this Department that your discharge was not caused by circumstances beyond your control.
 
 
 14
 Pozzie then sought judicial review.
 
 
 15
 In March 1994, the district court concluded that HUD's final decision was not arbitrary, capricious, or an abuse of discretion. The court held that HUD committed no "clear error in judgment" in denying Pozzie's mortgage assignment; according to the court, HUD could rationally conclude that arriving at work on time and working only authorized hours were circumstances of work life within Pozzie's control. Pozzie v. United States Dep't of Hous. & Urban Dev., No. 93 C 1085, slip op. at 15, 1994 WL 96687, at * 7 (N.D.Ill. Mar. 18, 1994). Pozzie appealed.
 
 II. Discussion
 
 16
 On appeal, Pozzie argues that HUD's decision to reject her mortgage assignment was arbitrary and capricious. She also contends that HUD improperly applied a per se rule that a defaulting mortgagor who loses her job and is denied unemployment benefits does not qualify for an assignment regardless of the circumstances surrounding the job loss.
 
 
 17
 Our review of HUD's denial of Pozzie's request for participation in the mortgage assignment program is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. Secs. 701 et seq. The APA provides that an agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). Under this standard, our sole task is to determine "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The "arbitrary or capricious" standard of review is a deferential one which presumes that agency actions are valid as long as the decision is supported by a "rational basis." Western & Southern Life Ins. Co. v. Smith, 859 F.2d 407, 410 (6th Cir.1988); see also Kisser v. Cisneros, 14 F.3d 615, 618 (D.C.Cir.1994) (review is "highly deferential"); Hussion v. Madigan, 950 F.2d 1546, 1550 (11th Cir.1992). Although the agency's decision is entitled to a presumption of validity, we must nevertheless engage in a "substantial inquiry," or in other words, "a thorough, probing, in-depth review." Citizens to Preserve Overton Park, 401 U.S. at 415, 91 S.Ct. at 823.
 
 A. Circumstances Beyond Mortgagor's Control
 
 18
 Pozzie's principal contention on appeal is that her discharge was outside her control because it came "out of the blue." She argues that in light of her record of nearly fifteen years of service, her "glowing" performance reviews, her employer's prior tolerance of her tardiness, and her previous supervisor's willingness to grant her flexible working hours to accommodate her commute, she had no notice that her job was in jeopardy and thus lacked time to "bring her fate within her control."[1]
 
 
 19
 Although the phrase "circumstances beyond the mortgagor's control" is not defined in either 12 U.S.C. Sec. 1715u or 24 C.F.R. Sec. 203.650(a), HUD's guidelines (as set forth in the HUD Handbook) do identify examples of qualifying reasons for default. These examples include "[d]ecreases in family income caused by unemployment or underemployment; loss, reduction or delay in receipt of Federal, state, municipal benefits ... or of private benefit payments ...; loss of support payments; or other loss of income because of divorce, illness or death." HUD Handbook No. 4330.2 REV-1, Mortgage Assignment and Processing Secretary-Held Servicing, at p. 2-5, Sec. 2-9(A)(2)(a) (March 1991). These examples have been described by the court in Brown v. Lynn, 385 F.Supp. 986, 1000 (N.D.Ill.1974), as reflecting the "necessary flexibility to deal with the inevitable temporary crises such as illness, temporary unemployment, etc., which all involved in the program knew would occur." Accord In re Madison, 60 B.R. 837, 839 (E.D.Pa.1986); Grasty v. United States Dep't of Hous. & Urban Dev., 636 F.Supp. 912, 917 (E.D.Pa.1985).
 
 
 20
 We are unaware of any case that addresses whether a mortgagor's default resulting from her discharge for constant tardiness and unauthorized overtime work qualifies as a circumstance beyond the mortgagor's control.[2] Based upon our review of the administrative record, we agree with the district court that HUD could rationally conclude that Pozzie's dilemma was of her own making and subject to her own control. The record establishes that Pozzie's employer gave her numerous warnings about arriving late for work and working unauthorized overtime. In her 1990 performance review, for instance, Pozzie was advised by her supervisor to stop working overtime without the permission of her manager and to improve upon her "long-term" tardiness problem. The record also reveals that since 1988, Pozzie had received warnings for tardiness and insubordination on eight separate occasions, four of which occurred in the final two months before her discharge. Pozzie cannot point to any evidence in the record to show that the basis for her discharge was outside her control or that HUD's final decision lacked a factual basis. We therefore agree with the district court that it was neither arbitrary nor capricious for HUD to conclude that Pozzie's termination was not caused by circumstances beyond her control.
 
 B. Per Se Rule
 
 21
 Pozzie also argues that HUD improperly adopted a per se rule that mortgagors who are fired from their jobs and denied unemployment benefits do not qualify for an assignment regardless of the circumstances causing their discharge. Citing Brown v. Kemp, 714 F.Supp. 445 (W.D.Wash.1989), and Cronkhite v. Kemp, 741 F.Supp. 828 (E.D.Wash.1990), she argues that such a per se approach is arbitrary and capricious.
 
 
 22
 In Brown, a self-employed mortgagor defaulted on her mortgage after suffering some business setbacks. HUD rejected her assignment request because her decision to be self-employed was a matter of personal choice, and her business difficulties were circumstances within her control. 714 F.Supp. at 446. The district court disagreed. Noting that HUD guidelines recognized loss of family income as a circumstance beyond a mortgagor's control, the court held that there was no reason why these guidelines should not also apply to those who chose to be self-employed. The court added that any rule excluding self-employed people from the assignment program would be inconsistent with HUD's regulations. Id. at 447.
 
 
 23
 In Cronkhite, HUD rejected an assignment application from a mortgagor who claimed that his illness prevented him from working and earning a salary to keep current in mortgage payments. HUD based its decision on information provided by plaintiff's doctors, who were unable to explain the pain that plaintiff suffered. The district court held that HUD abused its discretion in ruling out emotionally-based pain as a qualifying illness. 741 F.Supp. at 833. The court explained that even though plaintiff's pain may have been emotional or psychological in origin, such pain still constituted a circumstance beyond his control. Id. at 834.
 
 
 24
 Although Brown and Cronkhite suggest that per se rules that improperly exclude certain people from the assignment program may be arbitrary and capricious, there is no evidence in this case that HUD used any per se rule in evaluating Pozzie's application. HUD loan officer Whaley flatly denied the existence of any such rule.[3] In addition, the administrative record shows that the HUD reviewer gave careful consideration to the individual circumstances of Pozzie's situation and the facts pertaining to her loss of employment. In her summary of her conference with Pozzie, for example, Whaley noted that Pozzie attributed her tardiness to her thirty-mile drive each way to work and accompanying traffic problems, and that Pozzie claimed she performed unauthorized overtime in order to finish her assignments. The record also reveals that HUD gave Pozzie sufficient opportunity during the application process to supplement her file with additional information relevant to her financial status and assignment eligibility. "If HUD was using a per se rule, it is hard to understand why it bothered to gather so much information about financial status, case history, and assignment eligibility." Miasel v. Pierce, 650 F.Supp. 21, 24 (D.Minn.1986). Finally, far from issuing a conclusory determination, HUD gave concise yet complete reasons for its denial of Pozzie's request; HUD explained that Pozzie was discharged for excessive tardiness and for working unauthorized overtime, even though she had been previously warned about these problems on numerous occasions. We agree with the district court that HUD's decision to deny Pozzie's request for a mortgage assignment was not arbitrary, capricious, or an abuse of discretion.
 
 III. Conclusion
 
 25
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Pozzie also argues that her employer used tardiness as a pretext for firing her to implement cost-cutting measures, to avoid its pension responsibilities, or to cover up age discrimination. However, the record does not show that Pozzie ever presented this pretextual argument to HUD or to the district court. Because Pozzie failed to raise this argument in the district court, she has effectively waived appellate review of this issue. Alexander v. Erie Ins. Exch., 982 F.2d 1153, 1157-58 n. 5 (7th Cir.1993)
 
 
 [2]
 We note that at least two district courts have held that defaults resulting from voluntary actions of the mortgagor were not outside the mortgagor's control. Miasel v. Pierce, 650 F.Supp. 21 (D.Minn.1986) (default resulting from failure of business purchased by mortgagers was caused by circumstances within mortgagors' control; in voluntarily choosing to purchase a new business, mortgagors put at risk their ability to meet their mortgage obligations); Grasty v. United States Dep't of Hous. & Urban Dev., 636 F.Supp. 912 (E.D.Pa.1985) (default not caused by circumstances beyond plaintiff's control where plaintiff was out of the country moving possessions and thus failed to collect unemployment benefits which he could have applied towards his mortgage payments; such circumstances did not constitute the type of inevitable temporary crisis envisioned by Congress)
 
 
 [3]
 We leave open the possibility that under certain conditions a per se rule could be employed. Such use would presumably comport with the provisions of HUD's own Handbook which requires individual scrutiny for each request for consideration for assignment